FIRST NATIONAL BANK OF HUBBARD v. T. W. CLELAND ET AL.

Decided June 25, 1904.

**1.—Pleading and Judgment—Interest—Conversion.**

Where in an action for the conversion of an insurance policy for $1200 plaintiff prayed "for his damage for the conversion of said policy, to wit, $1200, for costs of suit, and for general relief," a judgment for the amount of the policy, $1200, together with legal interest thereon from the date of the conversion, was not, as to such interest, warranted by the pleading.

**2.—Same—Conversion—Tender.**

Where plaintiff's original petition asked for the possession of a policy, or its value, and by an amended petition he charged its conversion, and on the day the amended petition was filed defendant tendered the policy to plaintiff, but the record did not show whether this was before or after the filing, it will be presumed on appeal in favor of the judgment that it was after the filing, and it is therefore held of no avail.

**3.—Fire Insurance—Iron Safe Clause—Keeping Set of Books.**

Evidence considered and held to show a compliance with the iron safe clause required the assured, a merchant who sold almost exclusively for cash, to keep and produce a set of books.

**4.—Same—Burden of Proof.**

Where the evidence showed only that the fire occurred "on the morning" of a stated day, the burden of proof was on the insurance company to go further and show that it occurred at a time when the policy required the books to be kept in the iron safe.

**5.—Bank—Equitable Lien.**

A bank has not an equitable lien on a fire insurance policy left with it, for any debt due it by the owner of the policy, in the absence of a contract, express or implied, to that effect, and the giving of credit on the faith of the lien.

**6.—Same—Pleading.**

Judgment for such an equitable lien can not be rendered in favor of one who has not set up in his pleadings the facts relied on to establish the lien.

Appeal from the District Court of Camp. Tried below before Hon. P. A. Turner.

*Etheridge & Baker, Lee Frisby,* and *W. R. Heath,* for appellant.

*Sam D. Snodgrass* and *M. M. Smith,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—This is an action by T. W. Cleland, appellee, against appellant and the First National Bank of Pittsburg, Texas, one of the appellees herein, for the value of a certain policy of insurance issued to T. W. Cleland by the Western Assurance Company, in the sum of $1200, alleged to have been converted by the defendants. There was a judgment in favor of plaintiff against appellant, and in favor of appellee First National Bank of Pittsburg, Texas, against plaintiff; to reverse which judgment appellant has prosecuted this appeal.

The cause was tried by the court and the following conclusions of fact filed, which we adopt: "(1) I find that T. W. Cleland commenced doing business as a retail liquor dealer in Hubbard City, Texas, about the 14th day of November, 1901, on which day he procured from the West-

ern Assurance Company of Toronto, Canada, a policy of insurance for one year against fire, $300 on his bar, bar fixtures, etc., and $900 on his stock of liquor, for which he paid the premium.

"(2) I find that his entire stock of liquors and his bar and bar fixtures were entirely destroyed by fire on the 20th day of June, 1902, and that notice of the fire and proof of the loss was made and furnished to the company as provided by the policy.

"(3) I find that the value of the bar, bar fixtures, etc., exceeded $300, and the stock of liquors, etc., exceeded $900 at the time they were destroyed by fire.

"(4) I find that T. W. Cleland and J. H. Cleland owed said First National Bank of Hubbard City the note for $400 and the small overdraft pleaded by said bank in its answer in this case.

"(5) I find that the policy of insurance for $1200 was never pledged as collateral to secure said note for $400 due said bank before said fire, but I find that after the fire T. W. Cleland and J. H. Cleland agreed with the bank that it should be paid out of the first money collected on said policy, and that they had no other means to pay said bank, and that they are still willing for the bank to be paid out of said policy.

"(6) I find that the First National Bank of Hubbard City converted said policy of insurance to its own use on or before the 22d day of January, 1903, and that said policy was worth the sum of $1200 at the time of said conversion.

"(6a) I find that the facts fail to bring this case within the provisions of the 'iron safe clause,' but if it does come within the provisions of said clause, then I find that said provision was complied with.

"(7) I find that the Western Assurance Company of Toronto, Canada, is solvent and is still doing business in this State, and that the president of the defendant bank in this case is its agent now and is still issuing policies for said insurance company.

"(8) I find that the First National Bank of Pittsburg, Texas, has done nothing to render it liable for the conversion of said policy."

Upon these findings the court reached the conclusion that the plaintiff was entitled to judgment against the First National Bank of Hubbard City for the value of said policy at the time and place of conversion, which was $1200, and interest thereon at 6 per cent per annum from the 22d day of January, 1903, and costs (less the amount due said bank), also principal, interest and attorney fees on said note for $400, and the overdraft pleaded in this case by the said bank, and rendered judgment accordingly.

The contention is raised under the first assignment that it was error to render judgment for $1200, with interest thereon from January 22, 1903, because such interest is not in anywise alleged or claimed as damages in plaintiff's petition, or judgment asked therefor. If such interest is recoverable it would amount to more than the sum prayed for in the pleadings. In the prayer to the petition the plaintiff asked for judgment "for his damages for the conversion of said policy, to wit: in the

sum of $1200, for costs of suit, and for general relief." Thus it is seen that the amount of recovery asked for is limited to $1200, and it was error to allow plaintiff a greater sum by way of interest. Texarkana Water Co. v. Kizer, 63 S. W. Rep., 913.

It is contended that this suit, as originally instituted, was to recover "possession of the policy of insurance, or for the sum of $1200, the value of same, and for costs of suit and general relief," and that a tender of the policy was made to plaintiff on May 16, 1903, and he refused to accept it, and that such tender, having been kept good by proper pleading, is a bar to a recovery of a moneyed judgment for its value. The record shows that the suit was instituted on January 23, 1903, and charged a conversion of the policy on January 22, 1903. The prayer was to recover possession of the policy, or $1200, its value. On May 16, 1903, an amended original petition was filed in vacation, in which judgment was asked for damages for the conversion of the policy in the sum of $1200 and costs. It eliminated the prayer for possession of the policy. On the same day the defendant tendered the policy to plaintiff. The record fails to show whether such tender was made before or after the filing of the amended petition. In deference to the judgment we must conclude that it was made after the filing of such amended original petition. The conversion being complete and having been so treated by plaintiff before such tender, the same was not a bar to a recovery by him of a judgment for its value.

The finding of the trial judge that the insurance policy had never been pledged to the appellant bank as collateral to secure the note of Cleland, held by the bank, is not without evidence to support it. The evidence is conflicting on this issue, and it was the trial judge's duty to determine the issue. In view of the evidence we do not feel authorized to interfere with his findings. The court found that after the fire the Clelands did agree that the bank should be paid out of the first money collected on the policy.

The contention that the assured, Cleland, had breached the iron safe clause contained in the policy, in that he failed to keep and produce a set of books clearly and plainly showing a complete record of business transacted, including all purchases and shipments both for cash and credit, is not sustained. The evidence shows that the assured went into business on or about the 14th day of November, 1901, and that his property was burned on the 20th of the following June, less than one year from the date of the policy; that he preserved all of his original invoices, showing the amount of goods purchased; that he deposited his cash sales in the appellant bank each day, thereby preserving a complete record of the cash sales; that he did almost exclusively a cash business, but at the time of the fire he had on his books about $60 in accounts; these accounts were kept on a ledger, and he had drawn them off on a small book just before the fire, which book he used in collecting the accounts; that his ledger burned, but that he saved the bank book showing his cash sales, his small book showing the credit sales, and his invoice

of all goods bought since he opened the business. The assured also kept two small books showing the personal accounts of himself and father, and these books were saved, and together with all other books and papers pertaining to his business presented to the adjuster. The record does not show that the adjuster made any complaint to the assured that the books did not show a complete record of his business.

Again, the uncontroverted evidence shows that this fire occurred "on the morning of the 20th of June, 1902," and there is no evidence whatever showing, or tending to show, that the house was not open for business at the time. In order to sustain the defense of a breach of the iron safe clause in an insurance contract, to the effect that the assured failed to keep his books in a fireproof safe at night, and at all times when the house was not open for business, the burden is on the insurance company to show that the fire occurred at a time when the policy required the books to be kept in the iron safe. Allemania Fire Ins. Co. v. Fred, 11 Texas Civ. App., 311, 32 S. W. Rep., 2431; Aetna Ins. Co. v. Pitze, 78 S. W. Rep., 370.

The evidence fully supports the finding of the trial judge that appellant converted the policy of insurance to its own use on or before January 22, 1903.

It is insisted that while there is no agreement to the contrary, a banker has a lien upon all papers and securities in his hands for any debt due him from the owner of the same.

We have heretofore held that the bank had no contract lien on the insurance policy. In order for it to have an equitable lien it must be shown that there was a contract, either express or implied, that it should have a lien on the insurance policy, and the credit must have been given on the faith of such lien. Continental Nat. Bank v. Weems, 69 Texas, 501.

Again, the pleadings of appellant do not raise the question as to whether or not the defendant bank had an equitable lien on the policy in its possession under an implied contract, but rests its case solely on the allegations that the policy was placed with the bank under an express agreement that it be held as collateral security. In order to defend on the ground that the bank had an equitable lien upon the policy it was necessary for it to set up the facts upon which it relies to establish such lien.

We find no error in the record, except that pointed out by the first assignment, and this does not require a reversal of the judgment. The case having been tried by the court and conclusions of fact filed, the judgment will be reformed by this court and credited as of December 14, 1903, with the interest on the face of the policy, $1200, at 6 per cent from January 22, 1903, the date of conversion of the policy, to December 14, 1903, the date of judgment, the amount of such credit being $65.60. As reformed, the same is affirmed.

*Affirmed.*

Writ of error refused.