GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V. JOHN R. WALKER.

Decided January 25, 1905.

**Second Appeal—Change of Testimony.**

Testimony of a plaintiff on the second trial of a cause, clearly indicating a change, to conform to the opinion of the Appellate Court on a former appeal, and in view of other testimony, unquestionably false, held to require a reversal of a judgment in his favor.

Appeal from the District Court of Bexar.   Tried below before Hon. A. W. Seeligson.

*Baker, Botts, Parker & Garwood* and *Newton & Ward,* for appellant.

*Nat B. Jones,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by appellees to

recover damages arising from injuries received by falling into an un-guarded and unlighted pit in a roundhouse. The trial resulted in a verdict and judgment in the sum of $5,000. This is a second appeal. (1 Texas Law Journal, 76 S. W. Rep., 1, 228.)

On the former appeal of this cause the judgment of the District Court was reversed because of the insufficiency of the evidence to sustain a verdict. It was held that appellee having general knowledge of the construction of the roundhouse was charged with a knowledge of the existence of a pit in the stall in which he was injured unless he had been led by appellant to believe that there were stalls without pits. The court through Chief Justice James said: "If, for instance, he had been so informed by his foreman, or that unlighted stalls contained no pits, or perhaps if the stall had no track running into it, such or similar circumstances or inducements, in the absence of actual knowledge on his part, might reasonably have warranted plaintiff in assuming and acting upon the supposition that no such danger was there." These matters were merely suggested as illustrative of the position taken by this court, but one of them seems to have been seized upon by appellee and was pleaded and sworn to by him.

The first allegation as to the conversation of appellee with the fore-man appeared in the second amended original petition which was filed after the former decision of this court, less than two months before the trial. The facts on the appeal with the exception of the additions here-inafter indicated, are practically the same as on this appeal and refer-ence is made to our former opinion for a full statement of such facts and a full discussion of them. The additions and amendments made to the former evidence are fully set forth in the further course of this opinion.

On the former trial of this cause not one word was said about anything that was told appellee by the foreman as to the pits in the roundhouse being lighted, but on this trial he testified: "I went in there trying to find my boss, and he told me always to come to him when I wanted any-thing, and I went in there; he told me always where there were stalls that had pits in them they had lights, and unlighted stalls had no pits. . . . I had this conversation with Zureschke about what stalls had pits in them the first night I worked there, what brought up the con-versation was this: I got lost in the roundhouse and when I told him about it he told me how to look out for pits. He said: 'The stalls that had pits in them had lights in them, and unlighted stalls had no pits.' I found out after I got hurt that there is a pit in every stall." On cross examination he said: "It is a fact that this is the first time that I have ever made that statement under oath. . . . My lawyer, after my case was reversed, asked me if I and Zureschke had ever had any conversation, and I told him we did and he wanted to know what I told him. I told him what I have testified to on the stand. He said: 'I will go and see Mr. Zureschke and see if he remembers it.' . . . After my case was reversed, Mr. Jones asked me what about my conversa-tion with Zureschke and I told him what Mr. Zureschke said about these unlighted stalls having no pits, and he remarked he would go and see Zureschke. I didn't know when my case had been reversed, and I was having a conversation with Mr. Jones, my lawyer, that if Zureschke

had told me that the stalls in the roundhouse that had no lights in them had no pits, that Zureschke would not have been telling the truth. I found out that all the stalls had pits in them after I had worked there some time. I had been working there several nights before I found it out." Zureschke testified: "Every stall in the roundhouse has a pit, and did when I worked there, and when plaintiff was hurt, and I knew that fact and I did not tell John R. Walker to the contrary. If I had told John R. Walker that there was not a pit for every stall in the roundhouse of defendant I would have lied, and I did not lie." Appellee stated that Levi Hines was present when the conversation with Zureschke took place. He also stated that none of the pits was unlighted on the night that he had the conversation with Zureschke except two on the last end of the roundhouse. He afterwards modified this by saying that he did not know whether the stalls 14 and 15 were lighted that night or not. He swore that there were no lights in these two stalls on the night he was hurt. He fell into the pit in stall 14 or 15. Stalls 14 and 15 were not the ones described as the two last end pits which were unlighted on the night that the conversation was had with Zureschke. Each stall in the roundhouse had a pit in it and had a track running into it.

It is evident that the testimony of appellee was reconstructed to meet the former opinion of this court in this case. It is incredible that the conversation stated to have taken place should have never been referred to by appellee in his testimony before if such conversation had ever occurred. It would have been the most reasonable way to account for his act in walking into a pit with the knowledge of the existence of which the circumstances would charge him, and the very language that he used when his counsel asked him if he ever had any conversation shows that he knew what was in the opinion of this court and narrated a conversation that fitted it in a way to indicate that it had been expressly manufactured for it. How was it possible that this conversation should have sprung fully panoplied from his brain, when it had never been thought of before, and in answer to a general question as to whether he had ever had any conversation with Zureschke? And yet appellee reiterated that he had never heard the opinion of this court read and did not know even at the time of the trial on what ground it had been reversed, and that his counsel had never told him one word about the grounds of reversal, nor on what theory the case was to be again tried. The evidence of unerring manner in which he responded to the pregnant suggestion of the opinion of this court without the knowledge of one word of it, if it were true, would be miraculous, and is so utterly repugnant to reason that the bare statement of it is the strongest refutation of its verity. That statement, as well as the narration of the circumstances under which the conversation was had, should destroy it without other evidence.

In addition to the inherent weakness and inconsistencies of appellee's testimony, was the testimony of Zureschke, who was not, and had not been for a long while, an employe of appellant, who denied ever having told appellee that where a stall was not lighted there was no pit. Upon what theory could the foreman have made such a declaration in the face of the facts? What motive could have prompted him? Men seldom act without a motive and nothing has been, or can be suggested

that could have induced the foreman to tell one of his servants a false-hood so utterly unreasonable, and false and preposterous.

It is argued by appellee that as he stated that Levi Hines was present and heard the conversation with Zureschke, appellant ought to have had Hines to testify and the fact that it did not do so is a strong circumstance in favor of the truth of appellee's statement. On the other hand we think that appellee should have had the witness present to testify and remove if possible the suspicion that attached to his testimony, and the fact that he did not do so weakened the probative force of such testi-mony. It does not appear that appellant knew that appellee would testify that Hines was present at a conversation which its witness swore never took place and it had no way of knowing what appellee would swear until he actually testified on the trial.. Whether Hines was in existence at that time, and who he was and where he lived and what he was doing at the time of the conversation, was not stated by appellee. That he was not a member of the gang of employes to which appellee belonged is shown by the fact that appellee gave their names and Hines was not one of them.

If this were the entire testimony, this court would hesitate to interfere with the verdict of the jury, however strongly it might believe that appellee had changed his testimony to meet the opinion of this court, but in addition to the unreasonable and suspicious statements made in regard to the conversation with the foreman, there is evidence tending to show that plaintiff knew there was a pit in stall 12. In answer to the question as to whether appellee had seen any stalls prior to the night he was hurt, without lights, he answered: "Yes sir. They were in the east end of the building, there were two stalls that I never saw any lights in or pits in." Again he was asked: "You said in answer to some question asked by Mr. Jones that you knew that there were two pits or stalls in that roundhouse that were unlighted, but there were no pits, explain that to the jury." He answered: "I never did see any pits in them. There were two stalls in the east end of the roundhouse, I never did see them lit up, and never saw any pits in them." He also said, speaking of stalls 14 and 15: "There ought to have been two lights there and they were both out; all of the other lights in the roundhouse that I know of were burning; so far as I know the others were all burning; there is an electric light in each one of those stalls except those two east end stalls. I never saw a light up there. In every other stall I noticed there was an electric light. . . . I know the lights in the eastern stalls were never kept lit because I had never seen them lit. During the time that I had worked there I had a time or two seen stalls that were dark, after I got hurt, but I never saw a dark stall, except those two east end stalls, up to the time I got hurt, but after that I have seen them dark a time or two." Again appellee said: "I believe me and Mr. Zureschke spoke about there being pits where there were no lights, twice; the first time was the first night I worked under him, I don't remember now how long after I had been to work. That was the night I got lost. I don't remember who was present, I believe Levi Hines is the name. I think Hines was there. I couldn't say, but it was the latter part of the night. None of the pits was unlighted that night, except those two east end pits that I noticed, all the others were

lighted that I noticed." In spite of attempts by plaintiff to weaken and modify the effect of these statements, it is sufficient to show that appellee saw the stall into whose pit he fell lighted up on the night that the alleged conversation with Zureschke took place, and that if that conversation really took place, it had the effect of notifying appellee that each stall in the roundhouse had a pit in it, except the two stalls at the east end. The conversation instead of lulling him into security as to pit 15 was a direct notice that it had a pit because it was lighted. There was other testimony that tended to show that the electric lamps were inspected every day and that it was improbable that two stalls adjoining each other near the center of the roundhouse could have been unlighted for any length of time without it being noticed.

In addition to the facts narrated, there are other facts and circumstances which indicate that appellee must have known at the time he was hurt that every stall in the roundhouse had a pit in it. He claims to have been hurt on the fourth night that he labored in the roundhouse, and in the time he had been there he must have ascertained that every stall had a pit. He admits that every stall that he had entered had a pit in it, and that was sufficient to put appellee upon notice that all the others had pits. (Missouri Pac. Ry. Co. v. Somers, 71 Texas, 700.) There is authority for holding that a change of testimony to meet the requirements of an opinion of an Appellate Court, would not justify a reversal, as the credibility of the witness would be a matter peculiarly within the province of a jury. (Hunter v. Railroad, 116 N. Y., 615; Williams v. Railway, 155 N. Y., 158.) But where the evidence of the plaintiff is covered with the gravest suspicion and the verdict must rest upon his testimony alone, and where its inconsistencies are so strong as to shock the conscience and in addition where there are statements in his testimony which, if taken to be true, break down the theory of his case, an Appellate Court not only has the power to set aside a verdict based upon such testimony, but it is its bounden duty so to do. In a second appeal of the Somers case, above cited (78 Texas, 439), the plaintiff had changed his testimony to meet the opinion of the Supreme Court, and the verdict depended upon his uncorroborated testimony. The Supreme Court, after narrating the facts, said: "Such being the evidence we feel constrained to hold that the court below should have granted a new trial upon the motion of the defendant. Although this court has the power to review a case upon the facts, and to set aside a verdict which has evidence to support it, that power has ever been reluctantly exercised. But it is the right and duty of the court to set aside a verdict when it is against such a preponderance of the evidence that it is clearly wrong. (Willis v. Lewis, 28 Texas, 185; Dimmitt v. Robbins, 74 Texas, 441.) The plaintiff was contradicted by two disinterested witnesses; on two different trials he gave two inconsistent versions of the facts upon a most material point, and gave a very unsatisfactory explanation of the inconsistency. There was no evidence to support his case but his own. It seems to us, therefore, that the jury must have been controlled in their verdict more by sympathy for a hard working, zealous man, injured in a dangerous employment, than by the law of the case as applied to the evidence." The judgment was reversed solely on the ground of the insufficiency of the evidence, although

the appellee had sworn to facts which, if taken as true, would have supported the verdict. See also, Brown v. Percz, 79 Texas, 157, and Light v. Brown, 26 S. W. Rep., 886.

Because the evidence is insufficient to sustain the judgment it is reversed and the cause remanded.

*Reversed and remanded.*