AMERICAN NAT. INS. CO. v. FULGHUM. (No. 461.)

(Court of Civil Appeals of Texas. El Paso. May 27, 1915. On Rehearing, June 24, 1915.)

1. APPEAL AND ERROR ☞1003 — REVIEW — VERDICT.

Though there is a conflict in the evidence, appellate courts have the authority and the duty to set aside a verdict against such a preponderance of the evidence as to be clearly wrong, though they do so reluctantly and with extreme caution.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. ☞ 1003.]

2. INSURANCE ☞665—ACTION ON POLICY—RECOVERY—SUFFICIENCY OF EVIDENCE.

In an action on a policy against bodily injury effected directly and independently of all causes through external violence and accidental means, excepting accidents resulting directly or indirectly from entering or trying to enter a movable conveyance using steam as a motive power, wherein plaintiff claimed that he was struck by a projection from a freight car and thrown under the train, and defendant claimed that he was injured while attempting to board the train, evidence *held* not to sustain a verdict for plaintiff.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. ☞ 665.]

On Rehearing.

3. INSURANCE ☞666—LIABILITY—INTEREST—RIGHT TO RECOVERY—PLEADING.

Where plaintiff in his petition in an action on an accident insurance policy confined his claim to the indemnity specified therein, and attorney's fee, and the 12 per cent. damages allowed by Rev. St. 1911, art. 4746, without ask-

ing for interest or for damages sufficient to cover interest, interest was not recoverable.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1791; Dec. Dig. ☞666.]

4. INSURANCE ☞598—LIABILITY—INTEREST.

Under Rev. St. 1911, art. 4977, making 6 per cent. the legal rate of interest on sums due and payable under written contracts, interest is recoverable upon the amount contracted to be paid in an insurance policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1494; Dec. Dig. ☞598.]

5. INSURANCE ☞597, 598—LIABILITY—PAYMENT.

Under an accident insurance policy not specifying when an accrued indemnity should be payable the liability accrues when the accident occurs, and payment should be made when proof of this liability is made to the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1493, 1494; Dec. Dig. ☞597, 598.]

Appeal from District Court, Harris County; Norman G. Kittrell, Special Judge.

Action by Tom Fulghum against the American National Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Williams & Neethe, of Galveston, and Lane, Wolters & Storey and Paul Kayser, all of Houston, for appellant. Barkley & Green and Dave D. Hughes, all of Houston, for appellee.

HIGGINS, J. The American National Insurance Company insured Fulghum against bodily injuries effected directly and independently of all other causes through external, violent, and accidental means, agreeing to pay $1,000 for the loss of either arm, and the additional sum of $17.50 per week during the time he was incapacitated for work. The policy provided that it should not cover accidents, injuries, or loss of limb resulting directly or indirectly from entering or trying to enter or leave a movable conveyance using steam as a motive power.

Fulghum had his arm severed by a moving freight train in the yards of the Wabash Railroad at Hand, Mich., and brought this suit to recover upon the policy based upon the loss of such arm. Appellant defended upon the ground that he received his injuries while attempting to board the train while it was in motion. The plaintiff's theory was that he was walking beside the track toward the town of Adrian and was struck by some object projecting from the passing train going in the direction of Adrian, which threw him to the ground with an arm under the wheels. In response to a special issue, the jury found that plaintiff was injured in the manner claimed by him.

[1] The question presented by this appeal is the sufficiency of the evidence to support this finding. Our courts have at all times manifested extreme caution in disturbing the findings of a jury where there is a conflict in the evidence and always do so reluctantly;

yet they have the authority (Nowlan v. Hall, 97 Tex. 441, 79 S. W. 806; Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63) and it is their duty to interfere and set it aside where the verdict is against such a preponderance of the evidence that it is clearly wrong. Railway Co. v. Somers, 78 Tex. 439, 14 S. W. 779; Railway Co. v. Schmidt, 61 Tex. 282; Zapp v. Michaelis, 58 Tex. 275; Short v. Kelly, 62 S. W. 944; Kohlberg v. Awbrey & Semple, 167 S. W. 829.

[2] This case, we think, demands the application of this rule. Plaintiff testified that he was not working at the time of the accident, but had been doing so a short time before and had been up to the roadmaster's office to get his time signed up; not finding him there he was going down the road to get his two time checks signed up, and while walking beside the track and about six feet from the rail a freight train passed, going in the same direction, running at the rate of 25 or 30 miles an hour; that the engine and tender passed him when he was struck in the back by a projection from the train, thrown under the train, and his arm cut off. The projection extended from about the second car from the engine. At another point in his testimony he says he was going to see the foreman to get a pass over to Adrian as well as to have his time signed; that he had been told by the superintendent that if he would go to Adrian he could get a job. He was changing jobs, but was going over there to work for the same company. The train which struck him was going to Adrian, where he was also going. He denied that he attempted to board the train. He stated he did not sue the Wabash Railroad, and admitted giving it a statement and release for $50. He stated he did so because he wanted to come to Texas and they gave him $50 to come on. This statement reads:

"I, Thomas Fulghum, state that prior to the 13th day of August, 1912, he was a laborer in the employment of the Wabash Railroad, doing construction work, and that on the 11th day of August, he resigned and drew his pay and quit the service of said railroad; that on the 13th day of August, he went to Hand, Mich., and from there walked down the track westward from said station, at about 4:50 p. m., and while walking down said track a freight train was passing and he attempted to board same, slipped and fell, and was injured. At this time he was not in the employment of the Wabash Railroad and was on the company's property, and was not near any highway crossing. I attach no blame whatever to the Wabash Railroad, or its employés, as I was a trespasser at the time and had no right to attempt to get on a freight while it was moving or at any other time. My home is in Houston, Tex., and I am in destitute circumstances and desire to go to my home. Have no attorneys employed at this time for said accident. The above statement is the truth, and is made voluntarily by me this 11th day of February, 1913."

He admitted signing a letter to appellant, dated November 30, 1912, at Detroit, reading:

"American Nat'l Insurance Co., Accident Dept., % Mr. C. B. Black, Claim Adjuster, Gal-

veston, Texas—Dear Sir: I am in receipt of your letter dated November 11th, which was evidently mailed before receipt of letter which I addressed you on November 11th. In that letter I believe I explained very fully as to the fact that I was working for the company at the time I received the injury. Of course, I have got a claim against the Wabash Railway Company for damages and if they are able to show that I was not working for them at the time of accident might materially aid their defense. I have gone over the facts with two attorneys in reference to damage claim against the Wabash Railway, and both inform me that providing I can prove my statements by the several witnesses which I have, there would be no question but that I was working for the Wabash at the time of the accident. As I stated in my letter of November 11th, I received leave of absence the day previous to the injury and returned to Hand Station at about 4:30 p. m. on the day of the injury and reported to the foreman, under whom I was working. This foreman advised me to put in the balance of the day at work. I was on my way to the work assigned me by the foreman when the through freight passed, having a projection sticking from it which knocked me down, throwing me under the cars. I would state further that I have received full pay from the company, including the time spent in Detroit under leave of absence and in full for the day on which I received the injury. You will realize that I have been unable to work for several months, and that I am badly in need of the amount I would have coming under this policy to pay bills which I have contracted and to tide me over until I can secure a position and be able to take care of myself. I trust you will push this matter as rapidly as possible. Please address all correspondence to me, % C. G. Hill, 625 Moffat Building, Detroit, Mich., as I have left the Detroit Sanatarium, and address in the future will not be permanent. This will assure my receiving your mail promptly and avoid any future unnecessary delay."

C. G. Hill, mentioned in the letter, was his attorney and prepared the letter for him—so plaintiff testified. Upon his redirect examination, he denied making the statements contained in the written statement given to the Wabash Railroad. His explanation of the circumstances under which he gave the written statement reads:

"The claim agent came up to the depot. I was in the depot and he came up from Huntington, Ind. His son is assistant claim agent. His name is Dunham, and he says, 'Come upstairs and I will give you some money, and sign up some things;' and I says, 'I ain't going to sign nothing; I need money bad; I ain't got nothing, and they are pushing me for my rent out to the house;' but we went upstairs, and he says, 'Sign this, and I will see that you get a job, and will help you to get your insurance from the insurance company.' He read the policy over. I told him, I says, 'If you will do that, and give me a lifetime job, I will sign something;' but I never signed no such statement. I signed some paper up there, but there is a lot of that paper that I didn't sign. I did not read it over after it was reduced to typewriting."

Louis Mann, a telegraph operator, testified: "I was present at Hand, Mich., on August 13, 1912, when the accident to Tom Fulghum occurred. I saw the accident when it occurred. At that time I did not know the plaintiff in this case. Tom Fulghum had been employed by the Wabash Railroad Company as a section laborer prior to that time. I was standing about 100 feet from the place where the accident occurred. There was nothing between me and where-

the accident occurred that would obstruct my view of the accident. At the time and immediately before the accident happened, Tom Fulghum was walking along the side of the train, and tried to catch the train. He was walking west. The plaintiff was about 3 feet, I would judge, from the railroad track at the time of the accident. There was a freight train approaching the point where plaintiff was immediately prior to the accident, and was going in a westerly direction. The train was moving in the same general direction that plaintiff was walking. It was a freight train. Said train was not used for the conveyance of passengers. From five to ten cars had passed plaintiff before the accident occurred. The train was traveling approximately about 20 miles an hour. Immediately prior to the accident he was walking alongside of track, by side of train. I saw him attempt to catch the train. The train was in motion, running about 20 miles an hour. He caught the train, but lost hold, and fell under the train. I saw nothing that was projecting from the side of the train that struck plaintiff and knocked him down under said train. I saw it all, and what I have stated is true."

Cross-examination:

"When the accident occurred, I was on the outside of the ticket office. I knew Tom Fulghum only as a section laborer; never had an introduction to him, and cannot give a description of him. I know he was working for the Wabash Railroad through some one else. I had nothing to do with Tom Fulghum's employment. I was just watching him walking along as I naturally would do with any other person on right of way when the train was approaching. I had been watching him about five minutes. The train was coming from the east, on the main line or track nearest the depot office. There are three tracks, the main line, the passing track, and house track. There were no cars standing on any of the side tracks that I remember. It is not a fact that the first time I saw Tom Fulghum was after the accident occurred. I saw him from the time he came on the right of way until he was carried off."

Under the evidence detailed, considered in the light of all the attendant circumstances, it is quite manifest that plaintiff's version of the manner in which the accident occurred was evolved to meet the exigency of the case. There is a direct conflict between his testimony and the witness Mann, and if the plaintiff's testimony was not otherwise impeached, it would, of course, amply support the verdict. According to his testimony, he was not a trespasser in the railroad yards at the time of his injury, and if he was injured in the manner stated by him he would have had a most meritorious cause of action against the Wabash Railroad. He was represented by counsel at the time he released that company, and it is inconceivable that he would have released such a right of action for the paltry sum of $50. The statement which he gave the Wabash flatly contradicts his testimony on the stand, and the explanation which he gives impeaching its verity is a manifest fabrication. The letter of November 30, 1912, which he wrote appellant, contains statements which he does not now attempt to claim to be true, and he now admits that he was not working for the railroad. He attempts to avoid the consequence of these untruthful statements by saying his lawyer wrote the letter and he merely signed it. We deem it unnecessary to discuss the subject further. Under the evidence, the verdict should be set aside. Railway Co. v. Walker, 38 Tex. Civ. App. 76, 85 S. W. 28; Railway Co. v. Lovett, 74 S. W. 570; Railway Co. v. Ives, 34 Tex. Civ. App. 49, 78 S. W. 37; Kohlberg v. Awbrey & Semple, supra.

Reversed and remanded.

## On Rehearing.

The original opinion inadvertently failed to pass upon appellee's cross-assignment complaining of the refusal of the court to allow interest on the indemnity provided for in the policy.

[3] The plaintiff, in his petition, confined his claim to the indemnity specified in the policy, an attorney's fee and 12 per cent. damages allowed by article 4746, Revised Statutes. He did not ask for interest, and the damage claimed was not laid in sufficient amount to cover same. In the state of his pleadings, recovery thereof was properly denied. Railway Co. v. Addison, 96 Tex. 61, 70 S. W. 200; Railway Co. v. Starks, 109 S. W. 1003; Bank v. Cleland, 36 Tex. Civ. App. 478, 82 S. W. 337.

[4] In view of a retrial it is proper to say that interest is recoverable upon the amount contracted to be paid in an insurance policy. Article 4977, Revised Statutes; Insurance Co. v. Ice Company, 64 Tex. 578; Insurance Co. v. Swift, 130 S. W. 670; Insurance Co. v. Bank, 107 S. W. 114; Insurance Co. v. Wilderspin, 118 S. W. 1131.

[5] The policy here considered does not specify when an indemnity, which has accrued thereunder, shall be payable. In such case, the liability accrues when the accident occurs, and payment thereof should be made when proof is made to the company of its liability. Interest should be allowed from the date such proof is furnished. Insurance Co. v. Bank, supra.

The motion for rehearing is overruled.