**TEXAS & N. O. R. CO. et al. v. JONES.**
(No. 1000.)

(Court of Civil Appeals of Texas. Amarillo. May 31, 1916. On Motion for Rehearing, June 21, 1916.)

1. CARRIERS ⊚⇛318(9) — INJURY TO ALIGHTING PASSENGER—SUFFICIENCY OF EVIDENCE.
   In action by husband for wife's injuries while alighting from passenger train, caused by bumping of cars, conflicting evidence strongly contradicting plaintiff's claim, and unexplained absence of testimony by plaintiff and daughter, both present at accident, *held* not to support verdict for plaintiff.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1314; Dec. Dig. ⊚⇛318(9).]

2. EVIDENCE ⊚⇛76—PRESUMPTIONS—FAILURE OF PLAINTIFF TO TESTIFY.
   The failure of plaintiff to testify as to facts material to her case and directly under her observation allows a presumption against her that such testimony would operate to her prejudice.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 96; Dec. Dig. ⊚⇛76.]

3. APPEAL AND ERROR ⊚⇛1003 — REVIEW — QUESTIONS OF FACT—SUFFICIENCY OF EVIDENCE.
   It is the undoubted duty of the appellate court to interfere and set aside a verdict, where it has the conviction that the verdict is wrong and clearly against the preponderance of evidence.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. ⊚⇛1003.]

On Motion for Rehearing.

4. APPEAL AND ERROR ⊚⇛731(5)—ASSIGNMENT OF ERRORS—SPECIFICATIONS—SUFFICIENCY OF EVIDENCE.
   An assignment of error, "because the verdict and the judgment are against the great preponderance of the evidence," specifying the evidence, followed by a statement, purporting to be a part thereof, that "said verdict and judgment being so clearly against the great preponderance of the evidence, the court should, in its discretion and the power invested upon it under the law, set the verdict aside and grant a new trial herein," *held* sufficient statement of a manifestly wrongful verdict.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3021; Dec. Dig. ⊚⇛731(5).]

5. APPEAL AND ERROR ⊚⇛1003 — REVIEW — QUESTION OF FACT.
   Although there may be sufficient evidence to carry a case to a jury, yet, if the verdict rendered is so against the preponderance of the evidence as to show that manifest injustice has been done, it may be set aside on appeal although in so doing it is necessary to disregard evidence overborne.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. ⊚⇛1003.]

Appeal from District Court, Collin County; M. H. Garnett, Judge.

Action by A. J. Jones against the Texas & New Orleans Railroad Company and another. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

G. R. Smith, of McKinney, and Baker, Botts, Parker & Garwood, of Houston, for appellants. Clarence Merritt, of McKinney, for appellee.

HENDRICKS, J. The appellee, A. J. Jones, sued the appellants, the railway companies, for injuries alleged to have occurred to his wife, Mary Jones, as a passenger, at and near the depot in Dallas, Tex., while in the act of alighting from a train. The appellee and wife were residents of Collin county, Tex., and before the occurrence, charged as negligence, Mrs. Jones had been on a visit to some relatives in Houston county, Tex. She was accompanied by her five children, ranging in age from three to eleven years, and on the return trip, arriving at Dallas, at the Elm street station in that city, her husband was present at the depot to meet her, from which place they continued the journey over an interurban line from Dallas to McKinney.

As the journey proceeded on the interurban to McKinney, Mrs. Jones' condition developed the preliminary pains of miscarriage,

necessitating, upon arrival at McKinney, an immediate attendance of a physician, and after arrival, within a few hours, the miscarriage became complete. According to opinion testimony, at the time of the miscarriage, her condition of pregnancy had been of about three months' duration, and during which time the periodic menstrual flow of Mrs. Jones had continued. A cross-examination of Mrs. Jones developed that, a short time previous to her departure from Houston county for her return to Collin county, she had picked cotton, while visiting one of her relatives, for the period of about a week, necessitating the dragging of a cotton sack between the cotton rows. It was in evidence that she had made admission of a previous miscarriage, of not as severe a character, though, as the one in question. Her testimony on the stand was that she was not sure that the previous trouble was a miscarriage, and, if so, it occurred about eight years prior to the present injury, and subsequent thereto she had given birth to two children.

It was alleged in the petition that upon arrival of the train at Dallas, on account of the train standing upon the crossing at Elm street, the same was uncoupled at the Elm street crossing and the front end of said train was pulled north toward the Union Station, leaving plaintiff's wife and children in a coach south of the crossing, and that, while she was alighting and on the platform steps of the coach, the front of the train which had been uncoupled backed against the coach on which she was situated with unusual violence, throwing her against the floor and platform thereof as she was descending the steps, causing the injury. The alleged negligence submitted by the trial court as a special issue was:

"Whether or not the train upon which Mrs. Jones was riding gave a violent and unusual jar, or jerk, while she was attempting to alight therefrom, * * * caused by reason of the front coach on said train being propelled against the portion of the train upon which she was riding and from which she was attempting to alight."

The appellant specifically denied the allegation of negligence, and previous to the trial took the depositions of three different women friends of Mrs. Jones, who visited her at her home in McKinney, the testimony in which disclosed statements of Mrs. Jones, without any declarations of any jar or bump of the train causing the particular injury, and which, in its nature, such testimony of said statements is incompatible with the theory of negligence asserted in the petition; hence the appellee, A. J. Jones, the necessary and only party plaintiff to this suit, was upon notice before the trial of the proffer of a sharp contest of the issue whether or not the bump or jar of the coach, from which Mrs. Jones was alighting, ever actually occurred. The jury found that it did occur, and further found that the miscarriage of appellee's wife was not the natural sequence "of her general condition and her acts and habits prior to the time she arrived at Dallas."

[1] The appellants vigorously assert that the verdict and judgment are against the great preponderance of the evidence, reciting the particulars, according to their theory, to sustain said position. Two other women friends of Mrs. Jones, who visited her at the home in McKinney while she was sick, testified by deposition on behalf of appellee that Mrs. Jones stated in their presence that the cause of the miscarriage was a jar of the train, causing her to be thrown against a "seat." Mrs. Hart testified:

"She said the car gave a sudden jerk, and that another car ran against it very suddenly, and she was knocked over against the seat, and that she came very near falling after she got up [from the seat], but caught herself." (The interpolation is ours.)

The testimony of Mrs. Jones was that, upon arrival at the station in Dallas, she saw her husband through the window on the platform of the station, and that all of the children preceded her from the coach in alighting, the little girl, eleven years old, carrying a three year old baby, and assisted by her husband to the platform, and a boy ten years of age carrying a small suit case, and that she was the last to leave the particular coach. She also said:

"I was on the platform, and had started down the steps, a step or two, and the train come back against the coach with such force, full force, and just knocked it winding, and me, too. It was a hard jerk or knock, and I fell down; it threw me up against the baluster like, and struck me in the side, and I fell back on the floor [of the platform]. * * *"

She further said:

"Nobody helped me down out of the coach [referring evidently to the absence of railway employés]; only my husband took hold of me and helped me down, after I fell and got up; he took hold of me and helped me down himself."

It is clearly inferable from the situation of the husband, the appellee herein, at the steps of the coach, that such an occurrence, if it happened, was under his direct observation. She testified to two jars, or bumps, of the train—another immediately succeeding the one which knocked her down, but which she withstood.

[2] The little girl, eleven years of age at the time of the alleged occurrence, and twelve at the time of the trial, was one of usual size and intelligence of a child of that age, and the mother testified that she was at home, and she supposed she could come to the trial and testify. It may be, of course, that the position of the child, having preceded the mother from the coach, was such that she could not see the fall of her mother back upon the platform, if it occurred; but the noise of a jar, such as testified to by the parent, producing such a fall, could have been easily heard, and the jar itself, as an occurrence producing an accompanying fall of her parent, it is reasonable to say, would have been cognizable, and impressive, to a

child of that age. Neither the husband of the injured wife, nor the little girl, were witnesses on the stand at the trial, nor were any justifying circumstances adduced, explaining the absence, or breaking the force arising from the fact, of such withheld testimony. Appellee says:

"The argument that plaintiff was present when the car came into Dallas, and did not testify, is without force, because defendant had the same right to use him as a witness as did the plaintiff in his own behalf."

Such a weak statement to break the force of withheld testimony of a plaintiff actually cognizant of the main controverted fact, and sharply contested as a pivotal issue in the case, by able counsel in this case, reflects a mental condition of recognition that the absence of such testimony, under the conditions, is hard to explain, and the force of which is perplexing to avoid as a logical inference that plaintiff's real knowledge of the alleged occurrence would have militated on the stand against his own case. Lord Mansfield said that it is certainly a maxim:

"That all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side, to have contradicted." Blatch v. Archer, Cowp. 63, 65.

Starkie says:

"The conduct of a party in omitting to produce that evidence in elucidation of the subject-matter in dispute which is within his power, and which rests peculiarly within his knowledge, frequently affords occasions for presumptions against him, since it raises strong suspicion that such evidence, if adduced, would operate to his prejudice." Evidence, 54; Jones on Evidence, Blue Book, vol. 1, § 20, pp. 128, 129.

The decisions of the appellate courts of our state in substance announce the same principle. Thompson v. Shannon, 9 Tex. 536; Bailey v. Hicks, 16 Tex. 222; Chandler v. Meckling, 22 Tex. 36–44; Needham v. State, 19 Tex. 332; Insurance Company v. Tillman, 84 Tex. 31, 19 S. W. 294; Welsh v. Morris, 81 Tex. 159, 16 S. W. 744, 26 Am. St. Rep. 801; Railway Company v. Walker, 38 Tex. Civ. App. 76, 85 S. W. 28.

Dr. Hunter, the physician who administered to Mrs. Jones the night she arrived in McKinney, testified that he had no recollection of any complaint having been made that Mrs. Jones was knocked down on the train. He said, however, that several days after he had treated her (the time not definitely stated) Mr. Jones, the plaintiff, came to his office, and asked him "whether a person falling on a train, it could produce an abortion"; and he told him "it depended upon the condition of the woman and the nature of the injury."

Appellants' contention for reversal is that the charge of negligence was fabricated, and stresses, with other circumstances, the inquiry by the plaintiff of Dr. Hunter, as above stated. As a circumstance of suspicion, it is weakened by the testimony of two of the women who visited Mrs. Jones a short time after the alleged occurrence of statements by her that she was jerked against a "seat." The five ladies, three for the defendant and two for the plaintiff, who visited Mrs. Jones, are, of course, apparently disinterested witnesses. Two of plaintiff's witnesses are explicit that Mrs. Jones stated that she was taken sick before ever she arrived in Dallas; one of them testifying, "Mrs. Jones told me she was very sick before she got to Dallas, but did not say anything about experiencing pains; she said she kept getting worse and worse until she got to McKinney;" another stating that Mrs. Jones said, "She took sick on the way, and got very sick before she got to Dallas." Two of these witnesses said that upon subsequent occasions she further stated that it was the jar and the fall which was the cause of the miscarriage.

Henry Lair, a blacksmith, and a witness for the defendants, testified that, about a week after Mrs. Jones' miscarriage, Jones, the plaintiff, was in his shop, and upon inquiry by him (Lair) as to the cause of his wife's condition, Jones stated that he did not know what it was that produced such condition "unless it was dragging a cotton sack." It is true that plaintiff established the reputation of Lair for truth and veracity as bad, and the credibility of the witness was necessarily weakened. However, the particular fact of Jones' alleged statement that he did not know the cause of his wife's condition unless it was dragging a cotton sack was uncontradicted; and the dragging of a cotton sack, extending over the period of a week, just prior to her return to Collin county, was an admitted fact. Jones on Evidence says that what a party has said or done at a time when litigation was not thought of, having regard to the circumstances of time, place, and person, should furnish a substantial reason for his defeat when his case is founded on facts inconsistent with those evidenced by statements to which he has given publication. Volume 2, § 236, bottom of page 358 and top of page 359 (Blue Book). Necessarily a statement of a principle of this character is to be received with caution.

We will not analyze and reproduce the theories derivable from the testimony of the physicians as experts, with reference to the susceptibility of this woman to a miscarriage, or state their opinions, based on different hypotheses, as to what caused the injury; but, after deliberate reflection on the whole record, we think this verdict and judgment should be set aside.

Neither will we detail the testimony of other passengers to the effect that, so far as they knew, no jar or jerk occurred; nor the testimony of the railroad witnesses that the passengers were all discharged from the coaches before the train was moved; nor set out the contradictory inferences adduced by plaintiff that the uncoupling of the train could have occurred, and the backing up of same happened, in corroboration of the af-

firmative testimony of Mrs. Jones, for the reason that the nonproduction of the testimony of the little girl, and particularly the withholding and absence of the testimony of the plaintiff, cognizant of the sharply controverted fact, if it occurred, produces such a persistent and abiding conviction of strong doubt, in connection with other testimony in the case, of the impropriety of this verdict.

[3] It is the undoubted duty of this court to interfere and set aside a verdict where we have the conviction that it is wrong and clearly against the preponderance of the evidence. We admit the caution and reluctance of appellate courts in the manifestation of this power as against verdicts upon conflicting evidence. The purpose of withholding this testimony of the plaintiff and of the child, of course, is not shown. We impute to learned counsel a knowledge of the force of the principle of presumption, where unexplained there is a withholding of the testimony of witnesses of crucial facts, and in this case of the plaintiff, as we believe it should be imputed to this court, that we are entitled to the belief that the reasons for taking chances before the jury without such testimony is just as much attributable to the fact that the same would have injured very materially plaintiff's cause, and the accompanying inference that it was thought that the jury would believe against this kind of a defendant the uncorroborated affirmative statement of the wife testifying to the crucial fact, notwithstanding the husband's and child's mouths were closed. Though we are unable to find a particular case presenting a sharp analogy to the instant case, we unhesitatingly set aside this verdict. Short v. Kelly, 62 S. W. 944; American National Insurance Co. v. Fulghum, 177 S. W. 1008; Zapp v. Michaelis, 58 Tex. 275; Nowlin v. Hall, 97 Tex. 441, 79 S. W. 806; Kohlberg v. Awbrey & Semple, 167 S. W. 829; Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63; Railway Co. v. Somers, 78 Tex. 439, 14 S. W. 779; Railway Co. v. Schmidt, 61 Tex. 282. Reversed and remanded.

On Motion for Rehearing.

[4] The assignment in appellants' brief, upon which this court reversed and remanded the cause, is that the trial court erred "because the verdict and the judgment are against the great preponderance of the evidence in this," following the statement with succinct and particular specifications wherein the testimony, by numerous witnesses, by strong inference, was opposed to said verdict. It is now contended that there was no complaint by appellant that the verdict was the result of prejudice or passion, or an improper motive by the jury, and hence we should not have considered said assignment.

This objection, unless the statement in the brief, to the effect that said assignment is a mere statement, argumentative, and not in accordance with the rules, is made the first time in this motion for rehearing. The case of Benford Lumber Co. v. Knox, 168 S. W. 33, in a sense, sustains the position of the appellee, wherein the court says that a complaint presented by an assignment that the preponderance of the evidence did not justify the jury's findings does not raise the question that a finding is so manifestly against the great weight and preponderance of the evidence as to lead to the conclusion that the jury was influenced by an improper motive. We admit the technical distinction; however, it would seem that an assignment that a verdict is against "the great preponderance of the evidence" would present the thought, and import a meaning, of a manifestly wrongful verdict, because any verdict against the "great" preponderance of the evidence (in accentuating preponderance) is against the greater weight of the evidence to that extent as to exhibit an injustice. Evidently, though not probably appropriately merged into the assignment, that is the idea intended to be conveyed by the appellant, for at the close of the assignment, and purporting to be a part thereof, it is said:

"We submit to the court that, said verdict and judgment being so clearly against the great preponderance of the evidence, the court should, in its discretion and the power invested upon it under the law, set the verdict aside and grant a new trial herein."

Upon the whole, we shall let the assignment stand.

[5] Serious complaint is made that this court has improperly exercised such power. Necessarily, the exercise of a power of this character carries with it the idea of some discretion, for the reason that, in all cases of this character, there is testimony, though the appellate court thinks it is overborne, to sustain the verdict avoided. The appellee quotes the language of Chief Justice Stayton in Niagara Insurance Company v. Lee, 19 S. W. 1030, wherein he says:

"The Supreme Court will not reverse on the ground of the insufficiency of conflicting evidence to sustain the verdict, though it may be of opinion that the evidence somewhat preponderates the verdict."

The discretion exercised in cases of this character as to the amount of preponderance, it may be true, involves a difference at times of individual judgment on the part of the judges, which arises from the nature of the question and the temperamental composition of different courts. Take the case of Choate v. San Antonio & Aransas Pass Ry. Co., 90 Tex. 83, 36 S. W. 247, 37 S. W. 319. A passenger positively testified that in attempting to pass from one car to another, as a train was about to stop at a station, he was thrown from the cars by a sudden jerk. However, the testimony of several unimpeached witnesses was to the effect that plaintiff thereafter stated to them that he had stepped off the train when it stopped at the depot, and that when he went to step back he missed

the step, or slipped, and the wheel caught his foot. The Court of Civil Appeals said, stressing particularly the undisputed admissions of plaintiff, that the jury was not warranted in finding the injury was caused as alleged, and necessarily the appellate court disregarded the testimony of the injured passenger. The Supreme Court, after granting the writ, first argued that there was no evidence to show that the jerk was anything unusual in stopping and starting the train, under ordinary circumstances. On motion for rehearing the question of the railway's negligence was reconsidered, the court holding there was evidence in that respect, but saying, however:

"Although there may be sufficient evidence in a case to require the court to submit it to the jury, yet if the verdict rendered thereon is against the preponderance of the evidence, to that degree which shows that manifest injustice has been done, the trial court may, and should, grant a new trial. The judge should not invade the province of the jury and take from it the decision of a question which properly belongs to it; neither should he abdicate the functions of his office and permit the prerogatives of the jury to be perverted to the accomplishment of wrong."

The cause was necessarily reversed and remanded, as the Supreme Court has no power over the action of a Court of Civil Appeals in that respect.

In regard to our comments of the failure of the plaintiff to testify, it is said that it is not shown in this case that the husband was in attendance upon the trial. He was the plaintiff in the case, and the recovery belonged to the community estate, and the duty, under the law, devolved upon him to take care of the litigation; that is the principal reason the law makes the husband the sole party plaintiff. It is shown that he challenged the witness Lair the day before the trial (though he failed to contradict his statement on the stand), who testified that Jones stated to him that his wife's sickness was caused by the dragging of a cotton sack. It is true the wife's testimony was positive that the jerk of the train threw her to the platform of the coach. The inferences, however, from the testimony of numerous witnesses that the train was not disconnected, and that there was no jerk or jar after it was at rest, for the purpose of permitting passengers to alight at Elm street; the testimony of certain women friends, in effect that Mrs. Jones stated that she was taken sick before she ever arrived at Dallas; the testimony of Lair, though his reputation for veracity was impeached, of the statement of the husband of the dragging of a cotton sack being the cause of his wife's sickness, undenied, however, as to the particular fact; the fact that Mrs. Jones admitted that she dragged a cotton sack between cotton rows for a week just prior to the alleged injury; the admissions in this case that the woman was sick before Dallas was reached, though attributed by her to snuff and the heat; the fact that her husband, the plaintiff, saw the fall and did not see fit to corroborate her weakened testimony, after having been so strongly assailed by the appellant; the fact that a 12 year old daughter, normal so far as this record shows, immediately preceded the mother to the depot platform and necessarily heard the jar and the jerk of the train, testified to by her mother (if she did not see the mother fall), and shown to have been in the courtroom at a particular time of the trial, and not placed upon the witness stand to bolster the mother's assailed testimony on the pivotal point of the case, added to the testimony of the defendant's witness producing the inferences from its standpoint that no such jerk and collision ever occurred—impel this court to again reiterate, stronger than the statement in the original opinon, that according to this record this is an unjust verdict.

"Judicial tribunals are established to administer justice between litigants, and the first and most important step to that end is the ascertainment of the truth of the controversies which come before them. It is only when the truth is ascertained that the law can be properly applied in the just settlement of disputes. Litigants owe the duty of assisting in every legitimate way in the elucidation of the truth. When a defendant can by his own testimony throw light upon matters at issue, necessary to his defense and peculiarly within his own knowledge if the facts exist, and fails to go upon the witness stand, the presumption is raised, and will be given effect to, that the facts do not exist." Bastrop State Bank v. Levy, 106 La. 586, 31 South. 164–166.

The rule, of course, is not as strong in this state, as stressed by Justice Blanchard of the Supreme Court of Louisiana, where there is testimony sufficient to require the submission of the case to the jury; however, it has a commendatory ring as a forcible presentation, persuasive and appealing in certain character of cases. Notwithstanding the forcible and able argument of plaintiff's counsel, this court will not upon such a record make a fetish of a jury's verdict.

The motion for rehearing is overruled.

---

⬡⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

