TEXAS & N. O. R. CO. et al. v. JONES.
(No. 1298.)

(Court of Civil Appeals of Texas. Amarillo. March 13, 1918.)

1. APPEAL AND ERROR ⬅➡694(2) — ASSIGNMENTS OF ERROR—STATEMENTS.

Where the statement merely sets out the petition, without the evidence, under a proposition that court erred in not directing verdict, the assignment will not be considered.

2. CARRIERS ⬅➡320(31) — AGREEMENTS BETWEEN ROADS—QUESTION FOR JURY.

In action against two railroads for personal injuries, where it appeared that one had been running trains over the track of the other for 14 years, the court did not err in submitting to the jury the question as to whether there was an agreement between the roads.

3. RAILROADS ⬅➡260 — LESSEES AND LICENSEES.

A railroad is liable for negligence of other roads using its tracks, whether licensees or lessees.

4. APPEAL AND ERROR ⬅➡994(1)—WEIGHT OF EVIDENCE.

The appellate court cannot weigh each fact and decide as to the credibility of the several witnesses.

Appeal from Collin County Court; M. H. Garnett, Judge.

Suit by A. J. Jones against the Texas & New Orleans Railroad Company and the Houston & Texas Central Railroad Company. Judgment for plaintiff, and defendants appeal. Affirmed.

See, also, 187 S. W. 717.

G. R. Smith, of McKinney, and Baker, Botts, Parker & Garwood, of Houston, for appellants. R. C. Merritt and L. J. Truett, both of McKinney, for appellee.

HUFF, C. J. A. J. Jones, appellee, sued the Texas & New Orleans Railway Company and the Houston & Texas Central Railroad Company for damage, occasioned by injuries received by his wife while a passenger on the Texas & New Orleans Railway Company's train, October 24, 1914. It is alleged substantially on that date appellee's wife and four children embarked on the Texas & New Orleans Railway Company's passenger train at Jacksonville, Tex., on their way to Dallas, Tex., and after arriving there and after the train had gotten on the track of the Houston & Texas Central Railroad Company, in order to reach the Union Station, where Mrs. Jones was to alight, the train was uncoupled at a street crossing, which is alleged to have been Elm street, and the front end of the train moved across and pulled north towards the Union Station, and leaving Mrs. Jones and children in the coach just south of the street crossing, at which place passengers usually alighted, and, while she was alighting and while on the platform or steps of the coach, the front part of the train, to which was attached the locomotive, suddenly backed against the coach with great force and with unusual violence, and that the jar or jerk knocked Mrs. Jones down against the floor. It is alleged that these acts were negligent and which negligence it is alleged was the proximate cause of her injury. It is further alleged that, if appellee was mistaken as to the engine moving back and the cars being the property of the Texas & New Orleans Railway Company, then it was alleged that it belonged to the Houston & Texas Central Railroad Company. It is alleged: That Mrs. Jones was hurt internally, the nature of which could not be given further than that she became deathly sick, began flooding and miscarried, and her nervous system was greatly shocked and permanently impaired by reason of the injury and miscarriage. Her health was greatly impaired and destroyed, until she is now an invalid, and that her injuries are permanent. That then and since she has suffered violent and excruciating pains and will continue to do so. It was also alleged that each of the appellants were corporations and common carriers, incorporated under the laws of the state of Texas, and each was a common carrier for hire; that the Texas & New Orleans Railway Company owns and operates and maintains a line of railway from the town of Jacksonville, Tex., to the city of Dallas, where it connects with the line of its codefendant, the Houston & Texas Central Railroad Company, which last company owns a line from Dallas north into and through Dallas and into and through Collin county; that the Texas & New Orleans Railway Company used the tracks of the Houston & Texas Central Railroad Company in the city of Dallas, in reaching the union depot, which is the place where each received and discharged passengers, but the exact understanding and agreement existing between the two roads it is alleged was not known to appellee, but that it was not specially authorized by the legislative authority of Texas; that by reason thereof the Houston & Texas Central Railroad Company is liable for the torts and negligent acts of the Texas & New Orleans Railway Company, as above stated. They were each notified in the petition to produce such agreement or contract, or secondary evidence would be offered on the trial by plaintiff.

The jury found upon special issues that the train upon which Mrs. Jones was riding gave a violent and unusual jar, bump, or jerk, occasioned by reason of the movement of the front part of the train while she was attempting to alight therefrom; that such violent and unusual jerk or jar was negligence on the part of the defendant the Texas & New Orleans Railway Company, and such negligence was the proximate cause of the injury to Mrs. Jones; that by reason of such injury appellee was damaged $2,000. The jury also found that the miscarriage of Mrs. Jones was not the probable and natural sequence of her general condition, and caused

solely by such condition, or by her acts or habits prior to the time of her arrival at Dallas, when and where the injury was alleged to have occurred. The jury also found there was a contract or agreement between the two railroads, whereby the Texas & New Orleans Railway Company was permitted to and did use the tracks of the Houston & Texas Central Railway Company from the Texas & New Orleans Junction in South Dallas to the depot of the Houston & Texas Central Railroad Company at Dallas at the time of the alleged injury. The jury also found the car upon which Mrs. Jones was riding gave a violent and unusual jar, bump, or jerk, while she was attempting to alight, which was caused by the movement and operation of the train of cars, and that such movement was negligence on the part of the Texas & New Orleans Railway Company. This last finding was in answer to special issues requested by appellee in addition to those which had theretofore been answered, submitted by the court.

[1] The first assignment is based on the refusal to instruct a verdict for the Houston & Texas Central Railroad Company, because, it is asserted, there is no evidence showing negligence on its part and no evidence showing a defect in trackage or equipment on its part. The sole proposition under this assignment is that the court erred in not giving this charge, and that such error is fundamental. The statement thereunder sets out only the petition of appellee and no evidence thereunder. The argument appears to be based on the ground that the court ought to have sustained the general exception to the petition. Clearly, the assignment is not briefed under the rules. We do not think if there had been an assignment on the action of the court in overruling the general exception that it could be sustained. Every reasonable intendment will be indulged under this record as presented in favor of the petition. The facts are undisputed, and all the testimony that was introduced shows the track on which the injury occurred was the Houston & Texas Central Railway Company's track and at its depot. In the absence of testimony to the contrary, this we think sufficient to establish the liability of that company.

[2, 3] The second assignment urges that the court was in error in submitting the issue as to whether there was an agreement or contract between the two roads whereby the Texas & New Orleans Railroad Company was permitted the use of the Houston & Texas Central Railway Company's track because there was no evidence of any such agreement. The evidence in this case shows that the Texas & New Orleans Railway Company used the depot of the Houston & Texas Central Railroad Company together with its track to the depot, from a junction in South Dallas, known as the Texas & New Orleans Junction. The conductor said the Texas &

New Orleans Railway Company had been using this track and depot of the Houston & Texas Central Railroad Company for 14 years to his knowledge, and he supposed under some sort of an arrangement. The testimony of other witnesses is to the same effect. The injury is shown to have been received on this track at a point where passengers for both roads were received and discharged at the depot. The evidence that the injury occurred on the Houston & Texas Central Railroad track is undisputed except as to whether Mrs. Jones was actually injured by an unusual jar or jerk of the cars. It seems to us that when it is shown, as in this case, for more than 14 years the Texas & New Orleans Railroad Company used the track of the other road and they both used that track and depot in conjunction to take on and discharge passengers, that in the absence of any testimony to the contrary an agreement was shown between the two roads —at least if not an express agreement an implied one. But, as we understand the law, this is not vital. The Houston & Texas Central Railroad Company had a charter from the state, under which it was under obligations to use its road in the interests of the traveling public. The fact that it may do so by lessee or licensee would not have the effect to absolve it from the duty of seeing that its lessee or licensee provide instrumentalities and servants competent to perform the duties devolving upon the railroad, and that such lessee used ordinary care and skill for that purpose; for upon such care depends the lives and property of the general public, and especially passengers passing over such roads, and both the instrumentalities and servants should be reasonably competent to perform that service.

"The law is well settled that when an injury results from the negligence or unlawful operation of a railway, whether by the corporation to which the franchise is granted or by another corporation which the proprietary company authorized or permits to use its tracks, both the lessor and the lessee are liable to respond in damages to the party injured." Railway Co. v. Horne, 197 Ill. 250, 64 N. E. 331.

Our courts hold the same, as we understand the decisions. Railway Co. v. Culberson, 72 Tex. 375, 10 S. W. 706, 3 L. R. A. 567, 13 Am. St. Rep. 805; Railway Co. v. Owens, 75 S. W. 579; Railway Co. v. McGrath, 160 S. W. 444; Railway Co. v. Mentzer, 214 Fed. 10, 130 C. C. A. 404; Quigley v. Toledo Ry. Co., etc., Ann. Cas. 1915D, 992, notes.

The third assignment asserts that the uncontradicted proof shows that the injury complained of was the result of natural causes, and not the result of any injury Mrs. Jones received by falling on the steps. It will be noted the assignment is itself contradictory in a sense. Miscarriage was alleged as a result of the injury, or rather a concurring injury with others. The assignment assumes there was an injury by the

fall. The petition alleges internal injuries were received, the nature of which was not known, producing a nervous shock which permanently impaired the health of Mrs. Jones. It will be noted, also, the jury found that the fall was the proximate cause of her "injury." In answer to another issue which had been requested by the appellants, the jury found that the miscarriage was not occasioned by natural causes or from her previous condition and habits of life. The appellants appear to rely upon the cross-examination of the doctors to sustain their assignment. The examination of the doctors was largely based upon hypothetical questions founded upon evidence assumed by appellants to be true. Many of the facts and circumstances constituting the hypothesis were in dispute. The appellee framed a question upon facts which he asserted were true and obtained from the doctors answers favorable to his allegation; that is, that the injury caused the mishap. The testimony upon which these several hypotheses were based, and the truth thereof, were for the jury.

[4] The fourth and fifth assignments assert that the findings of the jury are not supported by the great preponderance and weight of the evidence; that the train was not cut and a fall and resulting injury occasioned thereby. We think the jury had evidence upon which to make the findings. It will be useless for us to discuss the conflicting evidence and the various statements, explanations, and inconsistencies in the testimony of the various witnesses for both parties. In order to do so, we would be required to weigh each fact and to decide as to the credibility of the several witnesses, which is not in our province.

The case made by this record is different from the record as made on former appeal and passed on by this court in 187 S. W. 717, in that the daughter and husband, who were present at the time of the injury, testified on the latter trial, and the testimony is different in several other particulars, not necessary, as we view the case, to point out.

The case will be affirmed.

---

⬡═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes