### Robert Zapp v. Theo. Michaelis.

(Case No. 1441.)

1. Damages — Charge of court.— In a suit brought to compel the execution of a deed in accordance with the terms of a bond, and damages for its non-delivery, damages were also claimed for wrongfully closing up a street "for two years next preceding the filing" of a supplemental petition. *Held*, that a charge instructing the jury that, if they should find damages for plaintiff, they should return a verdict for such damages as he had suffered by closing the street from "two years preceding the filing of the petition to the time of trial," was error.

2. Verdict.— When the evidence is so conflicting that the jury might well be justified in finding either way, the verdict will not be disturbed; "but the supreme court has never failed, when the occasion, in their opinion, required it, to set aside a verdict that was clearly wrong; as where it was without evidence, or manifestly against the weight of evidence."

3. Practice in supreme court — Remittitur.— When, under the charge of the court, which was correct except as to the basis on which damages were allowed to appellee, a verdict was returned for him for damages, with no sufficient evidence to support it, he was permitted by the supreme court to file within twenty days a *remittitur* of such damages, as a condition on which the judgment should be affirmed in other respects, but on his failure to file such *remittitur*, the judgment to be reversed.

Appeal from Fayette. Tried below before the Hon. L. W. Moore.

Suit brought October 28, 1879, by Michaelis, against the appellant Zapp, upon the covenants of a title bond from Zapp to Michaelis, of date March 24, 1869, for thirty and $\frac{1}{50}$ acres, a part of what was known as the "Pullen tract," adjacent to the village of Round Top, in Fayette county. The consideration was $358.50, as follows: $50 cash, and the balance in instalments, the last of which fell due January 1, 1872. The bond called for a deed with warranty title. Michaelis took immediate possession, and paid the purchase money as it matured. The field notes in the bond were followed by this clause, which concludes the description of the land, to wit: "Containing, with half the streets southwest of blocks 7 and 8, which are to be opened forever, an area of thirty and $\frac{1}{50}$ acres." Michaelis, soon after taking possession, to wit, 1869, built and extended his fence in parallel lines beyond the whole of the north line of his tract, and, crossing the street southwest of blocks 7 and 8, connected with Zapp's fence on the south line of said blocks, thereby closing up and appropriating to his (Michaelis') use, the street southwest of blocks 7 and 8.

In 1869 Zapp commenced fencing up the balance of the Pullen tract, and completed it in the spring of 1870. This condition of the fencing by the respective parties remained until 1876, when, by agreement of the parties, a joint fence was built by them in the center

of the street southwest of blocks 7 and 8, Michaelis building a plank fence for one-half the distance, and Zapp a rail fence the other half, thereby each party inclosing under his own fence half the width of the street, and by their joint action closing up the same. This joint fence in the street remained from 1876 to 1879, when, in 1879, and before the institution of this suit, the joint fence was removed, each party removing his portion of the same upon his own land. Zapp delivered a deed in conformity with an agreement claimed to have been made subsequent to the bond, and embracing one-half of the street referred to. This deed was not satisfactory to Michaelis, and suit followed. The relief sought was: 1. A deed in accordance with the bond. 2. Damages, $500, for non-delivery of a proper deed. 3. Damages, $500, for closing up street mentioned in the bond. Zapp answered with a general denial, and set up the agreement subsequent to the bond, and the delivery of a deed in conformity with the agreement. He set forth the closing of the street referred to in the bond as before stated, but expressed a willingness that the street be kept open, if Michaelis desired to repudiate the agreement by which it was closed in the manner above stated. On May 14, 1880, Michaelis filed an amended petition, which he called a supplemental petition. In it he averred that he purchased with reference to a certain map exhibited to him by Zapp, in which the Pullen tract was laid off in blocks and streets, and so as to connect the street mentioned in the bond with streets leading to the village of Round Top, by which street and its connections he would have way to and from the village; that said way was the inducement to purchase, and that without it he would not have purchased. He averred that he was by trade a gunsmith, and that by the act of the defendant Zapp in closing up the street and its connections, he had been injured in his business as a gunsmith at the rate of $200 a year for two years next preceding the filing of the supplemental petition. In his amendment he also renewed the prayer for damages, set forth in the original petition. Zapp answered this pleading by a general denial, and specially denied that he exhibited a map to Michaelis, or that he sold to him in reference thereto; on the contrary, he asserted that before selling to Michaelis he informed him of his purpose to fence in all the Pullen tract in farm and pasture. The jury being charged, returned the following verdict: "We, the jury, find for the plaintiff the sum of $256 damages incurred to him by certain streets mentioned in the petition being closed up; also, said streets to be open so as to give him access to the town of Round Top, Texas, according to plot annexed in plaintiff's petition."

The judgment divesting the title out of Zapp decreed the land to Michaelis, awarding him the amount of the verdict, $256, and decreed the opening of the street mentioned in the bond, and also its connections with certain other streets leading to Round Top, fixing the width of the streets at forty feet, and ordered that they be opened by Zapp; "and unless it be done by him within thirty days, an order do issue, upon the affidavit of Michaelis, his agent or attorney, to the sheriff, directing and requiring him to open said streets."

The giving of the following instructions was relied on as error:

6. "If you find, under the instructions given, in favor of plaintiff as to the opening of the street connecting with Round Top, you may find such damages as he has incurred by closing said street, from two years preceding the filing of the petition to this time, not to exceed $200 per year."

7. "On estimating the damages, you will not find those merely supposititious, but only such as have been actually incurred to his business as a gunsmith."

Von Bibenstein testified that in December, 1868, he subdivided and platted the addition to Round Top, laying off streets, etc., as indicated by Exhibit B to petition; it being the idea that the land could be sold to more advantage if so laid off as an addition.

After Michaelis bought of Zapp, witness, in 1876, made another survey of streets southwest of blocks 7 and 8, for Zapp, so as to include one-half the streets. At the time, Michaelis asked Zapp if the putting up of the fence along that line would affect his right to outlet along the street to Round Top, and was answered no.

Michaelis testified that Zapp exhibited the map to him as an inducement to him to make the purchase, and that he bought because of and with reference to the map and the open ways to Round Top, and would not otherwise have bought. He was a gunsmith by trade, and said he had been damaged $200 per year in his business as a gunsmith, from May 14, 1878, to time of trial, by reason of being shut off from Round Top and inaccessible to his customers. Henkel testified, among other things, that several persons coming to Round Top to get gun-work done, and inquiring for Michaelis, declined to take their work to him, upon learning that he was so inaccessible, but neither witness gave names or dates. Either route to Michaelis' place, after the closing of the streets, was longer than the direct route closed.

Zapp testified that he neither exhibited the map to Michaelis nor sold with reference to it; but he also testified, that when Michaelis came to him to buy land, he told him that if he

wanted a place for business he had better buy a certain indicated part; and again, that he never offered Michaelis a deed with the stipulations in it concerning streets contained in the bond.

· WEST, ASSOCIATE JUSTICE.— The sixth and seventh paragraphs of the charge of the court are brought in question by the assignment of errors.

The appellee, in his original petition, simply claimed briefly, in the most general terms almost that could be used, and as it were *pro forma*, a judgment for $1,000 in damages, by reason of the refusal of appellant to make him a deed in accordance with his bond, and also by reason of his having closed up the streets that by the same instrument the appellant had agreed might be kept open forever.

There was no pretense of proof offered on the trial to show any special damages to the appellee resulting from the failure of the appellant to execute a deed to him in accordance with the terms of his bond for title. On the contrary, as a matter of fact, the appellee was at once let into the actual possession of the property purchased, at the date of the bond, and continued from that period down to the day of trial in undisturbed enjoyment of the premises, as completely and as fully as he could have done if he had been holding under the deed, to which, by the terms of the bond, he was justly entitled.

The other averments in the original petition as to the damages sustained by appellee from the unauthorized acts of the appellant in closing the streets named in the bond, are of so vague and indefinite a character that the appellee seems on the trial below to have abandoned all idea of recovering under them. The court also in its charge practically instructed the jury to allow no damages under the averments as contained in the original petition, and confined their inquiries to the more special allegations on the subject of damages in this case to be found stated in appellee's supplemental petition, as incurred by him in or about his business as a gunsmith.

The averments on the subject of damages to the appellee resulting from the loss of business as a gunsmith, found in the supplemental petition (which would more properly be the subject of an amended petition, under the rules laid down by this court for the guidance of the district court), were, under the circumstances, sufficient to admit of proof in support of this allegation. Under these averments, however, the appellee claimed damages only for the two years next preceding the filing of the supplemental petition, in

which this special ground of damages was for the first time set up. That pleading was filed on the 14th of May, 1880.

No damages were sought to be recovered for any period of time later than two years from the date of the supplemental petition, and no recovery was sought for any damage that appellee might suffer between the date of the filing of the supplemental petition and the day of trial. Evidence, however, on this special element of damage was adduced, covering a period of ten years down to the date of the trial, and the court invited the attention of the jury to this subject, by instructing them that they might estimate the damage to appellee's business resulting from the unlawful closing of the streets, for two years preceding the filing of the original petition down to the day of trial.

The attention of the jury should have been directed in estimating the damages, alone to the two years preceding the filing of the supplemental petition, as specially desired by the appellee in his pleading. He sought no recovery for any other period of time. He waived his right of action for damages (if any action he had) accruing two years before the suit was brought, and for damages that he may have sustained between the date of his supplemental petition and the day of trial. Yet the appellee testified that he had been injured considerably since the filing of the suit. He also swore that, by being fenced off, he had been damaged at least $200 a year, because his customers had no direct mode of reaching his gunshop. The evidence shows that the appellant had inclosed the land as early as the year 1870, more than ten years before the supplemental petition was filed. He also testified that he had been damaged at the rate of $200 per annum in his business as a gunsmith two years preceding the 14th of May, 1880, and at the same rate down to the day of trial.

The court, especially in a case of this character, should have by its charge directed the minds of the jury to the very point in issue. We cannot say that no injury resulted to the appellant from this failure of the court to limit their attention, when considering the subject of damages, to the precise period of time to which the appellee had confined his claim.

The evidence on this branch of the case is, when considered in the most favorable light for appellee, and assuming that the court had instructed the jury correctly, of the most meager and unsatisfactory character. There is no proof on the subject except that of the appellee and the witness Henkel. In his evidence, appellee confined himself to a reiteration of his statement that he was dam-

aged by reason of the closing up of the streets, in his business as a gunsmith, in an average of $200 per annum from the time the streets were closed down to the day of trial. None of the facts upon which this estimate is based are given. It resulted, he says, from the fact that his customers could not have access to him, but no person is named who at any time failed to give him work to do because he was inaccessible. Nor were any of his customers, who were thus by the acts of the appellant deprived of his services (and we may fairly infer that they were numerous), placed upon the stand. Nor does the evidence of Henkel, as it appears in the record, add much, if anything, to the strength of appellee's case. He says that he had resided in the village of Round Top during the whole time that the appellee lived on the land purchased of appellant, and that he had seen several parties who came to Round Top and wanted to have gun-work done, and inquired for appellee, and, on learning how they would have to go to reach him, would not take their work to him, because it was so far out of the way to get to him. No date is fixed by this witness as to when he saw the several parties to whom he refers. As the evidence shows that appellee had been fenced off from Round Top ever since 1870, this may have occurred during that year or some year anterior to 1878. The names of the persons are not given, nor any other circumstance that would enable the appellant to show that no such occurrence ever took place, and if it did, that it was at a period of time different from that for which the appellee was now seeking to recover damages.

The error in the charge of the court on this subject will necessitate a reversal of the case. We are not prepared, however, to say, even if the court had, in its charge, correctly submitted the issues of fact to the jury on this point, that the evidence was sufficient, under the facts and circumstances of this particular case, to authorize the finding of the jury on the question of damages. This court has no doubt held on many occasions, and wisely held, for many reasons, that where the evidence is so conflicting that the jury might well be justified in finding either way, that the verdict will not be disturbed.

It, however, has never failed, when the occasion, in their opinion, required it, to set aside a verdict that was clearly wrong; as where it was without evidence or manifestly against the weight of evidence. Willis v. Lewis, 28 Tex., 191.

In all other respects, except in the one above adverted to, the charge of the court is a clear presentation of the issues raised by

the pleadings, accompanied by a series of instructions in every way proper, under the state of the case, to be given to the jury to enable them to arrive at a correct conclusion.

We are, for this reason, disinclined to reverse the judgment; and as the question of damages does not seem to be the main issue in the case, we have concluded that if appellee, through his counsel, will file a *remittitur* of the damages in this court within the next twenty days, to allow the judgment in other respects to be affirmed, appellee paying the costs of this court. Chadwick *v.* Meredith, 40 Tex., 384. If, however, the *remittitur* is not made by the expiration of that time, then the judgment to be reversed and the case remanded, in order that a new trial may be had in accordance with the views herein expressed.

JUDGMENT AFFIRMED.[1]

[Opinion delivered January 16. 1883

1. NEGLIGENCE — RAILWAY COMPANY. — An engine used in operating a pile-driver for a railroad corporation was defective, and the engineer who managed it was negligent and reckless in controlling his engine. Both these facts were known to a superintending agent of the company, who in person supervised the work of the pile-driver, with full power from the company to employ and discharge all other employees. A laborer while employed by the company was directed by this superintendent to do a service connected with driving a pile, in performing which his foot was so crushed as to require amputation. The injury resulted not from the defective engine, but the negligence of the engineer; the maimed workman having no notice either that the engine was defective or that it was being operated by a careless man. In a suit for damages on account of the injury against the company, a verdict was rendered for the plaintiff for $7,646.11, compensatory damage. On appeal, *held,*

(1) If the plaintiff had known, or by due care might have known, of the careless and reckless character of the engineer, and had continued the employment after knowing the risk, placing himself in a position to be injured by such carelessness of his fellow servant, he could not have recovered; but being ignorant of the carelessness of the engineer, whose character was known to the supervising agent of the company, his right to recover results from the following rules:

(2) If an employer, either in person or through an agent having authority to employ and discharge workmen, retains in his service one whose duties are hazardous to the lives of others, when he knows such person to be careless and negli-

---

[1] NOTE. — The *remittitur* was filed within the time specified in the opinion, and a rehearing asked for by the appellant was refused.