HOUSTON & T. C. R'Y CO. v. ANTON SCHMIDT.

(Case No. 1809.)

1. VERDICT — NEW TRIAL.— While the supreme court will not exercise so great a discretion as the district judge who hears the evidence should in granting a new trial, yet when the record shows that there is a deficiency of evidence to support the action, and it is manifest that the verdict is clearly contrary to the evidence, it has never felt wanting in power to reverse a judgment based on such a verdict.

2. VERDICT — PRACTICE.— Doubts, if they exist, as to the reasonable sufficiency of the evidence to sustain the verdict, may by the trial court be resolved in favor of the verdict; but when it is clear that the evidence was not reason-

ably sufficient, under all the circumstances of the case, to satisfy the mind of the truth of the allegations on which it was rendered, it should be set aside; and if this rule has not been observed by the district court, the judgment based on such verdict becomes a proper subject of revision on appeal.

3. FACT CASE.— See statement of case for facts upon which a judgment was rendered for a plaintiff suing a railway company for damages caused by alleged personal injuries, and which on appeal was reversed.

ERROR from Harris. Tried below before the Hon. James Masterson.

This case is chiefly remarkable for the singular verdict rendered in view of the evidence.

Appellee sued to recover damages for a personal injury. He alleged that he purchased a ticket at Elgin, a station on appellant's road, to be carried to Paige; that soon afterward, at about 8 o'clock P. M., appellant's train arrived at Elgin and came to a full stop at the proper place for passengers to get off and on; that he attempted to get on one of the passenger coaches, and while he had one foot on the step of the coach, and was in the act of bringing up his other, the train was suddenly and violently backed, causing him to make a misstep and get his left foot and leg caught between two cross-ties in the track, when the train came against him, causing him to bend over while his foot and leg were so engaged, and thereby broke his leg and foot, inflicting upon him a painful and permanent injury. He alleged that the backing of the train was without signal or warning, and was gross carelessness and negligence on the part of appellant's servants in charge.

Defendant below pleaded the general issue. Verdict and judgment in favor of appellee for $500.

. The errors assigned were:

I. There is no legal evidence to support the verdict on which the judgment was rendered, and it is contrary to the law and the evidence, in that it does not show that Schmidt was injured in manner as he alleges.

II. The testimony shows that if Schmidt was in fact injured, it was because of his contributory negligence in attempting to get on the car on the opposite side from the passenger platform at which the train was standing, and which had been erected for the convenience and safety of passengers in getting on and off at that point, and if he had been on said platform he could not have been hurt.

Appellee was the only witness for the plaintiff below as to the manner in which his injury occurred. He testified that he was on the freight platform when the train arrived, and that he walked

down the steps and was on the ground between the freight platform and the cars when the conductor called "All aboard." He then attempted to get on; and while he had one foot on the step of the car and was in the act of bringing up the other, the train was suddenly backed, which caused his left foot to miss the step and go to the ground, where it got between two ties. That the backward movement of the train compelled him to bend backward to prevent the train from running over him, and in this way he was injured in his leg and foot.

This statement accorded with the allegation in his petition in reference to the manner and means in and by which he claims to have been injured. He stated that he was not then drunk, and that it took much to make him so.

W. P. Miles testified that he saw him in the evening of the night he was hurt and about thirty minutes after he was hurt, and he was somewhat intoxicated.

Witness Durfee saw the plaintiff about ten minutes after he was hurt. His actions and smell of his breath showed that he was drunk. He sat up with him, and said the influence of the liquor was not so apparent in the latter as in the fore part of the night.

Witness Gordon testified that Schmidt had been drinking during that day and was drunk and asleep near the office door on the freight platform when the train arrived. He waked him in the presence of James Quinn.

Witness Quinn saw Schmidt drunk and asleep on the platform and saw Gordon wake him, and heard him tell him the train was coming. Schmidt's condition was such that witness did not think he knew anything.

Witness Quinn says he saw Schmidt leave the freight platform; he did not leave it by the steps, but fell off, and when he struck the side-track he fell, and was at no time nearer the train than the place where he fell; witness noticed him particularly, because he feared he would be run over by the train.

Witness Gordon was present from the arrival of the train until its departure; did not see Schmidt leave the freight platform. The first time he saw him after getting off the platform Schmidt was on the ground by the edge of the side-track and in front of the office door. Just before the train left he saw him holding to the freight platform, and the conductor told witness to go to Schmidt and prevent him from making for the train and thereby being run over. Schmidt was at no time nearer the train than when he was standing holding to the freight platform when the train left.

When the train left, Schmidt was standing holding to the freight platform, standing and acting like a drunken man.

Witness Durfee testified that appellee told him, about ten minutes after he was hurt, that as he went to step on the train some one pushed him back and he caught his foot under the rail. He told witness Gordon, about fifteen minutes after the train left, that he was hurt by the conductor, who kicked him off the train. He told his landlord the next day after he was injured that when he attempted to board the train the engineer started and he fell between the cars. Thus those witnesses testified, but appellee denied that he made any such statements.

Dr. Rutherford stated that the injury might have occurred in the manner testified to by appellee, and could have occurred by jumping from a height as well as in the manner alleged.

Appellee's attending surgeon testified: "He may have been injured as alleged in his petition, but from my long experience I am free to say that it is more than probable that the injury was received from a leap. If it had been received as the plaintiff alleges, his sufferings would have been far greater."

*Baker, Botts & Baker*, for appellants.

*Fisher & Kirlicks*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— It is urged in this court, as it was in the court below on motion for new trial, that the verdict and judgment are contrary to the evidence, and that it does not show that the appellee was injured in the manner alleged.

It is also claimed that the evidence shows, if the appellee was injured in the manner stated in his pleadings, that the injury was the result of his own contributory negligence.

A careful inspection of all the evidence makes it too apparent to us that these propositions are true, and that the verdict is contrary to the evidence.

The facts and circumstances testified to by and for the appellee, and the uncontroverted testimony of other witnesses, renders it almost as certain as human testimony can render certain any fact, that the appellee was not injured in any manner through the negligence of the appellant or its employees. These matters were brought to the attention of the court below, in the motion for a new trial, and should have been considered sufficient.

While the verdict of a jury is entitled to great weight when ren-

dered on evidence reasonably sufficient to sustain it, yet, when rendered contrary to evidence, or against the great preponderance of the evidence, and it is most likely that injustice has been done, trial courts should not hesitate to grant new trials.

This court does not exercise the same latitude of discretion in this respect as does the trial court, but when it is manifest that a verdict is clearly contrary to evidence, it has never felt wanting in power to reverse a judgment based on such a verdict. Long *v.* Steiger, 8 Tex., 462; Taylor *v.* Ashley, 15 Tex., 50; Patton *v.* Evans, 15 Tex., 363; Willis *v.* Lewis, 28 Tex., 192; Zapp *v.* Michaelis, 58 Tex., 275; G., H. & S. A. R. Co. *v.* Bracken, 59 Tex., 71 (1 T. L. R., 248); Garvin *v.* Stover, 17 Tex., 295; Edmundson *v.* Silliman, 50 Tex., 112; Chandler *v.* Meckling, 22 Tex., 42.

In the case last cited it was said: "One of the substantial rights of a party defendant, when he takes the proper steps to demand it, is that the facts alleged as a ground of action against him should be established by proof reasonably sufficient. When there is proof reasonably sufficient, but which is opposed by evidence leading to a contrary conclusion, there is then presented a case of conflicting evidence, in which it is difficult, and often impracticable, for the court to interfere. Hence the rules (governing all courts) in relation to evidence greatly conflicting have been established. The same difficulty, however, does not exist where there is a deficiency in the proof adduced to establish the cause of action. It will not do for the court to say that there is some evidence to support the verdict, and it must stand. In such cases the true question must be, Is the evidence reasonably sufficient to satisfy the mind of the truth of the allegations? Doubts as to this point, if they exist, may be thrown in favor of the verdict. But when it is clear that the evidence adduced is not reasonably sufficient (under all the circumstances of the case) to satisfy the mind of the truth of the allegations, then the verdict should be set aside, on the proper motion being made. When it is made to appear, or is obvious to this court, that such rule has not been observed by the district court, it then becomes a proper subject of revision by the supreme court."

We think this, the whole case being considered, such a case; but in view of the fact that the judgment will be reversed and another trial be had, comment will not be made on the evidence.

REVERSED AND REMANDED.

[Opinion delivered March 11, 1884.]