### JOFFRE v. MYNATT.　(No. 8017.)

(Court of Civil Appeals of Texas. Dallas. Nov. 9, 1918. Rehearing Denied Dec. 14, 1918.)

1. BILLS AND NOTES ⬉492—ACTIONS—PLEA OF NON EST FACTUM—BURDEN OF PROOF.

Plea of non est factum places the burden upon plaintiff of establishing defendant's execution of note.

2. APPEAL AND ERROR ⬉204(1) — REVIEW — NECESSITY OF OBJECTION BELOW.

An exception to evidence as incompetent, and hence insufficient to support a verdict, must be overruled, where no objection was made below to the admissibility of such evidence.

3. EVIDENCE ⬉574 — SIGNATURES — EXPERT TESTIMONY—SUFFICIENCY.

The testimony of expert witnesses that the signature on a note was that of defendant *held* too weak and uncertain to support a judgment for plaintiff, as against the positive and direct testimony of defendant and others.

4. EVIDENCE ⬉589 — WEIGHT AND SUFFICIENCY—UNCONTROVERTED EVIDENCE.

While the jury are judges of credibility of witness, they cannot arbitrarily disregard evidence of unimpeached witnesses against whom there are no discrediting circumstances other than that one of them was a party interested.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Mrs. Berelia Mynatt against Mrs. Fannie Joffre. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Chas. F. Clint and D. B. Eades, both of Dallas, for appellant.

Albert Walker and Geo. K. Holland, both of Dallas, for appellee.

RAINEY, C. J. Suit is by appellee to recover on a note alleged to have been executed by appellant and E. H. Joffre for $1,250 and payable to the order of W. C. Mynatt. A plea of non est factum was interposed by Mrs. Fannie Joffre denying signing said note. E. H. Joffre was alleged to be dead and his estate insolvent. A trial was had before a jury, and verdict and judgment were rendered against Mrs. Fannie Joffre for the amount of the note, from which she appeals.

The only question we will consider is that the great weight and preponderance of the testimony is against the verdict and judgment, and it should be set aside.

[1] By the plea of non est factum the burden of establishing the execution of the note by Mrs. Fannie Joffre was placed upon Mrs. Mynatt. She sought to do this by the testimony of three expert witnesses, whose testimony was to the effect that the signature of Mrs. Fannie Joffre to the note, as compared with the admitted signatures to documents admitted in evidence, was the same as that to said documents; that they were writ-

ten by the same person, and in their opinion said signature was written by Mrs. Joffre. Neither of these witnesses ever saw Mrs. Joffre write her signature, nor had any business transaction with her or had any experience with or handled her writing. Mrs. Mynatt, whose husband was dead, testified that she heard E. H. Joffre, before the note was given, ask her husband if he would accept the note if his mother would sign it, and that it bore Mrs. Fannie Joffre's name when it was delivered to her husband. Mrs. Mynatt never claimed that she saw Mrs. Joffre sign said note, nor did any witness testify that they saw her sign it. On the other hand, Mrs. Joffre testified that she never executed the note or authorized any one to sign her name to same; that her son had signed, without her authority, her name to other notes which she paid to prevent trouble. Mr. Eades, a young attorney, testified that E. H. Joffre, while consulting with him about this, acknowledged on several occasions that he had signed his mother's name to the note without her knowledge or consent, and wanted to know if he was criminally liable for so doing; that E. H. Joffre was dead from his own hands. Three witnesses were introduced by Mrs. Joffre as experts. Two of them were employés of the bank with which she did business. They both testified that they were familiar with Mrs. Joffre's signature from handling her checks passing through the bank; that in their opinion she did not sign the note. One of them had been in the bank for sixteen years and the other five years passing on signatures. The third witness testified as follows:

"I am a banker at Irving. I know Mrs. Fannie Joffre. * * * I have been a banker at Irving about nine years. I have to pass on signatures in that bank. Mrs. Joffre has done some business with me, not a great deal; but she does some. I have had occasion to take her signature at the bank, and have had occasion to know it. (Witness was shown the note sued on in this case.) In my opinion that is not her signature. I see that period after the 'Fannie' on that paper. (Witness was shown other signatures.) I do not see any period after the 'Fannie' on any of these others."

Mrs. Joffre had been a patron of the National Bank of Commerce for more than sixteen years and was possessed of considerable property. Some eight witnesses, being banker, merchants, doctor, and business men living in a small town near where Mrs. Joffre lived and where she did business, testified that they "knew the general reputation of Mrs. Fannie Joffre in the community in which she lived for truth and veracity and honesty, and that it was good." D. B. Eades testified in behalf of appellant in reference to a conversation had with E. H. Joffre and his brother Eric Eades regarding E. H. Joffre having signed his mother's name to the note in question and about his liability, both civil and criminal.

[2, 3] Appellee contends that, before the note was delivered, E. H. Joffre asked Mynatt if the note was good with his mother's signature, and thereafter presented the note signed as it is, which she claims is a corroborating circumstance showing its validity. We do not concur in this view, for it in no way tends to show that Mrs. Joffre executed the note. In our opinion the establishment of Mrs. Joffre's signature by appellee rests on the mere opinion of the three witnesses, who were not acquainted with her or her signature. They never saw her write or had any transaction with her in which they would have a chance to learn anything upon which to base an opinion as to her writing. It is true proof of handwriting is permissible where comparison is made with an admitted or proved signature which is introduced for comparison. In this connection, appellant contends that the evidence on this point is not sufficient to base a verdict, as the evidence is incompetent; but the reply is that there was no objection made to its admission, and, this being so, we have to overrule the objection here urged. Said evidence being admissible, we next consider its weight and probative force. It is too weak and uncertain to support a judgment against the positive and direct testimony introduced by the appellant. Talbot v. Dillard, 22 Tex. Civ. App. 360, 54 S. W. 406; Willis v. Lewis, 28 Tex. 185; Railway Co. v. Schmidt, 61 Tex. 282; Zapp v. Michaelis, 58 Tex. 270; Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

[4] The only testimony which is direct and positive to the signing of said note by Mrs. Joffre is that of herself, which is that she never signed nor authorized any person to sign it for her. There is nothing in the evidence tending to contradict her testimony, except the testimony of three witnesses by comparison of handwriting. This being the case, the jury had no right to disregard her testimony because she was an interested party. Malone v. Bank of Commerce, 162 S. W. 369.

In the case of Grand Fraternity v. Melton, 102 Tex. 402, 117 S. W. 788, the court said: "The jury were the judges of the credibility of the witnesses, but they had not the right to arbitrarily reject the evidence of an unimpeached witness against whom there was no discrediting * * * circumstance. * * * The jury were the judges of the weight of the evidence, but they could not lawfully deny proper weight to undisputed facts with no suspicion cast upon them. If the jury had the power to discredit any and every witness and to disregard any and all facts, their verdicts could not be set aside by the judge nor reviewed by the appellate courts. Yet the law enjoins it upon the courts to set verdicts aside when contrary to the evidence or the law."

In Hanley v. Gandy, 28 Tex. 211, 91 Am. Dec. 315, in discussing the weight to be given testimony as to the genuineness of signatures by comparison of handwriting, the court quotes from Boman v. Plunkett, 2 McCord (S. C.) 518, as follows:

"I come therefore to the conclusion, as a circumstance in aid of doubtful proof, comparison of handwriting is admissible, but, per se, is so feeble as to be unsafe to act upon; and that, in the absence of any other proof, it would be inadmissible."

While the verdict of a jury is entitled to great weight when based on evidence reasonably sufficient to sustain it, yet, when it is rendered contrary to the great preponderance and weight of the evidence as adduced in this case, we feel compelled to reverse the judgment and remand the cause for a new trial.

Reversed and remanded.

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes