## JOFFRE v. MYNATT. (No. 8642.)

(Court of Civil Appeals of Texas. Dallas. March 25, 1922. Rehearing Denied April 22, 1922.)

1. **Evidence ⬅571(6)—Expert testimony as to handwriting cannot be discarded altogether.**

Even though expert testimony as to handwriting is unsatisfactory in character and should be received and acted upon with great care and caution, it cannot be discarded altogether as evidence.

2. **Evidence ⬅588—It is jury's province to pass upon credibility of witnesses.**

It is the province of the jury to pass upon the credibility of the witnesses and to accord to the testimony of plaintiff's son as to admissions made to him by defendant, which defendant denied making, such weight as in their judgment they believed it was entitled to.

3. **Appeal and error ⬅999(1) — Appellate court can only determine whether there was evidence sufficient to support conclusion of jury.**

It is not the province of the appellate court to perform the functions of a jury, but simply to determine whether there was evidence before the jury to support the jury's answer to the special interrogatory.

4. **Bills and notes ⬅517—Evidence held to sustain finding defendant signed note in suit.**

Where defendant denied executing the note in suit, evidence consisting of expert testimony as to comparison of handwriting, testimony of witnesses familiar with defendant's signature, and testimony concerning other facts and circumstances tending to support an inference she signed the note, *held* sufficient to sustain the answer of the jury to a special issue that defendant did sign the note.

5. **Evidence ⬅474(14), 568(3) — Witnesses who had seen defendant write name held competent to testify as to genuineness of signature, and objection held to go only to weight of testimony.**

Witnesses, who had seen defendant sign her name several times and had had occasion to refer frequently to the instruments containing the signature of defendant, are competent to express an opinion as to the genuineness of the signature of defendant on the note in suit; the objection to the qualifications of such witnesses going rather to the weight of their testimony than to its competency.

6. **Trial ⬅307(3)—Jury can take with them note sued on notwithstanding denial of signature by defendant.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1957, the jury can take with them in their retirement to consider the verdict the note in suit, though the genuineness of defendant's signature was denied, notwithstanding the objection that by so doing each of the jurors were permitted to become a witness and make a comparison of the handwriting on the note with other handwriting of the defendant.

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Suit by Mrs. Berelia Mynatt against Mrs. Fannie Joffre. Judgment for the plaintiff, and defendant appeals. Affirmed.

Clint, Eades & Eades, of Dallas, for appellant.

George K. Holland, of Dallas, for appellee.

VAUGHAN, J. Appellee filed this suit against appellant on the 13th day of March, 1916, to recover on note in the principal sum of $1,250 payable to the order of W. C. Mynatt (now deceased), alleged to have been executed by appellant and her son, E. H. Joffre (now deceased) on the 17th day of February, 1914, and due one year and six months after date. E. H. Joffre was alleged to be dead and his estate insolvent.

Appellant in due form interposed a plea of non est factum denying that she signed the note in question.

This is a second appeal from a verdict and judgment rendered against appellant in the trial court for the full amount sued for. The former appeal resulted in the judgment of the trial court being reversed and cause remanded on the sole ground that the evidence was not sufficient to support the verdict. See Joffre v. Mynatt (Tex. Civ. App.) 206 S. W. 951.

The cause as presented by this appeal on the pleadings is practically the same as on first appeal, but on facts materially different, as additional evidence was introduced by both parties which will, as to appellee's evidence, be reflected in the discussion of the one assignment of error on which the disposition of this appeal is made to depend, viz.:

"The court erred in sustaining plaintiff's motion for judgment herein because the verdict and answer of the jury to the issue submitted to it is unsupported by and is contrary to the evidence adduced upon the trial of said cause, in that the plaintiff failed to prove that the defendant executed the note sued on, and the defendant by positive and uncontroverted evidence clearly showed that she did not sign or execute the note in question, and hence the verdict of the jury is unsupported by evidence and is contrary to and against the evidence and insufficient to support a judgment for the plaintiff, and therefore said judgment should be set aside and a new trial granted herein."

This challenges the sufficiency of the evidence to sustain the verdict and judgment.

The cause was submitted to the jury upon one special issue: "Did the defendant, Mrs. Fannie Joffre, sign the note in question?" This question was answered in the affirmative.

Following is all of the evidence supporting the verdict:

J. L. Croswait, witness for appellee, testified as follows:

"I have resided in Dallas seven years. I am assistant cashier at the Security National Bank. I have held such position nearly eleven years, right at eleven years, with the same bank all the time. I do not now have occasion to pass on signatures. It has been a year since I had occasion to do so. Up to that time I had been passing on signatures for about five or six years; I don't remember exactly. . I passed on them all the time; all day long, that was my work. I have compared the signatures to the first amended supplemental answer filed herein by the defendant, Mrs. Fannie Joffre, in this case, which contains her admitted genuine signature, her first amended original answer in the same case, which contains her admitted signature, and also a note for $1,250, being the note in this case, payable to W. C. Mynatt 18 months after date, containing the signature of E. H. Joffre and the alleged signature of Mrs. Fannie Joffre, and the admitted signature to the second amended original answer of the defendant, Mrs. Fannie Joffre. From my comparison I couldn't state about the genuineness of the signature on the note, because I don't know which is the genuine signature of Mrs. Joffre. I would state that, if any one of these signatures are genuine, they are all genuine. In my opinion the same party that signed these instruments signed the note. Yes, sir; that is my opinion.

"There are differences in the signatures, but the characteristics are the same. There are differences in them. There might be some difference between the signature on the note and the other three; the letters might be closer together, but the characteristics are the same. I do not see on any of her signatures to the court papers a period after the word 'Fannie.' There might be a period on the note, and it might not be a period. There is a mark there, but it is not a part of the signature, but there is something there; there is what purports to be a period after the word 'Fannie' on the note, and there is nothing of the kind on the other papers that I have been testifying about. Lots of forgeries are committed on banks. I am not a teller in the bank; I have been assistant auditor for the past eleven years. The teller is not the money man, only on the items that he handles. The items that come through . the teller's window are very small part of the items that come through the bank. The biggest part of the checks are paid through the collection department and the teller never sees them at all. We come in contact with lots of forgeries. We have paid forged checks. However expert a man may be, checks are sometimes drawn and signatures sometimes made which will deceive the bankers. I am not undertaking to tell the jury that this is not one of those cases. I said in my opinion the handwriting is the same, just as if I were passing on a check. I do not undertake to say that the party who signed the note signed the other document; I didn't see her sign them. I couldn't say that there is nothing certain and positive about expert testimony; whether there is or not.

"I have said that the signatures of the same person is not always exactly the same; they are frequently not the same. The general characteristics, however, of the signature are always the same; there are always characteristics which are the same. I am not attempting to say that these are exactly the same, but in my opinion the characteristics are the same.

"An expert forger sometimes does simulate the characteristics of the people who sign their names to checks, that bankers pass, but an expert forger can very seldom get the characteristics right. In point of fact they do get it right enough to pass through banks, very seldom. It is not a fact that you can sit down and put a piece of gauze over the name and get it exactly the same. You cannot get it exactly the same to save your life. It can't be done."

T. K. Cloverland, witness for appellee, testified as follows:

"I have lived in Dallas 2½ years. I came from Sherman to Dallas. I am in the banking business with the Central State Bank. I have been there 2 years and 3 months. I am head teller at the bank. My duties require me to pass on signatures every day. I have been doing that for 18 months in that bank, and 3 years at another bank in New Mexico. I have passed on signatures for about 4½ years. I have compared the signatures to the first amended answer of the defendant, Mrs. Joffre, in this suit, her first supplemental answer in this case, and her second amended original answer in the same suit, all of which contain her admitted genuine signatures, with the signature to a note for $1,250 dated February 17, 1914, payable to W. C. Mynatt, and signed by E. H. Joffre and alleged to have been signed by Mrs. Fannie Joffre. I would take it to be the same signatures. I would pay a check on that. They look to be the same signatures to me.

"My banks sometimes pays out—that is, the tellers pay out—money on forged checks; they make mistakes.

"I guess half a dozen forgeries occur in our bank in a year. We pass on a stack of checks that high in a year. The percentage of forgeries, compared with the number of checks passed on, is so small it would be hard to say. I say a half dozen checks a year. I see them all, and we have paid, I would not say for sure a half dozen checks a year, but approximately a half dozen checks a year, but I will say that 1,500 or 2,000 checks come in every day.

"I have paid out money on forged checks myself. I know as a matter of fact that there are not very many forged checks that come in; they are few. Where they do come in, I have paid them myself, and I have been there for years, and it is my business to know, but whether it is one thousand, or how many, I have paid forged checks, because I believed it was the genuine signature. I don't undertake to tell the jury that all those names were written by the same person; it is just my opinion."

Appellee testified that it was a part of the arrangement between W. C. Mynatt, her husband, and E. H. Joffre, one of the comakers on the note sued on, that Mrs. Fannie Joffre, appellant, should execute the note with E. H. Joffre.

Appellant testified that she often helped her son in his business of buying and selling cattle, and that she actually signed the notes for her son E. H. Joffre in a transaction with Metzger Bros., in the year 1914, which was about the time the note involved in this suit was executed.

Mrs. Bert Pemberton, a daughter of appellant, after having testified that she was familiar with appellant's signature and that appellant's name to the note sued on was not her handwriting, was shown another instrument with the name of appellant written thereon and, in reference to same, testified:

"There are some things in this signature that I have never seen her put in her signature, but I would not say that it is not her signature. I would not say that it is and I would not say that it is not."

Mrs. Littlepage, another daughter of appellant, testified:

"I think my mother had considerable dealings with her son (referring to E. H. Joffre). She assisted him in a good many of his operations."

The note sued on was introduced in evidence, being as follows: Of date February 17, 1914, for the principal sum of $1,250, signed by Mrs. Fannie Joffre (appellant) and E. H. Joffre, payable to the order of W. C. Mynatt one year and six months after date.

The following evidence introduced on the last trial was not before the court on the former trial:

Appellee, Mrs. Mynatt, testified: That she did not know Mrs. Fannie Joffre personally, just knew her when she saw her. That in 1914 her husband, W. C. Mynatt, sold E. H. Joffre some dairy cattle, and that the note in question was given in part payment therefor. That she did not know much about the transaction, only that Mr. Joffre came down to the house where Mr. Mynatt was sick, and asked him if he would take his mother's name on the note with him. That she was there when the conversation occurred about signing the note. That she thought it was the next day after he came over that she saw it; it had Eugene Joffre's and his mother's signatures to it. That she never saw Mrs. Joffre about the note, but wrote to her about it and got a letter from her. That the letter had been misplaced. It was not written by her, but by her daughter. That she was the owner of the note sued on and that same had not been paid. That she demanded payment from E. H. Joffre. That she wrote Mrs. Fannie Joffre and asked her about it and told her that her name was on the note. That she was not present when hen husband and E. H. Joffre made the trade, only when he came down to see about the note. That she did not see E. H. Joffre sign the note and did not see Mrs. Joffre

240 S.W.—21

sign it, but was satisfied that she did. That her husband and E. H. Joffre were both dead.

"Before E. H. Joffre died, I went to him several times and demanded payment of the note. He committed suicide in the year 1916. This note was made February 17, 1914, and that would make it due about August 17, 1915. I saw him several times about the note. I went to see him several times about it and phoned him several times, and he always said to give him a little more time; that he was sick, and he had all kinds of excuses, and promised to pay some at a certain time, and when the time came he would not pay, and I would go out and see him and ask him again. I 'rung' him up and asked him about it, and he said, 'Did you get the letter from my mother yesterday?' and I told him, 'Yes,' and I says, 'She says she did not sign the note,' and he says: 'She did; she has just forgotten it.' He had been over there all day before. I told him that she said she didn't remember signing it or any papers, and he said, 'Well, she has just forgotten it.' That was when she wrote back to me when I wrote to her, she wrote me that that was not her note; that she didn't remember signing any notes for him. In her letter she said she didn't remember signing the note. Mr. Joffre himself told me she had just forgotten it."

Harvey Mynatt, a witness for appellee, testified:

"The plaintiff in this case is my mother. I have seen the instrument here, purporting to be the note in this case. It is the subject of this litigation. I have been to see Mrs. Joffre about this note. I don't remember the date; it has been several years ago; I don't remember just when it was. It was before this suit was instituted, and after the note was due. I went out to see her at Irving, Tex. I took the note to her, and she said she didn't remember signing a note for Mr. Mynatt; she didn't remember anything about it, and she gave me a letter that she had written to some friends in France, and we compared the two handwritings together. She said that they were alike, but she couldn't remember signing the note. She did not deny that she had signed the note; all she said was that she didn't remember signing it. She said the signatures were alike, but she couldn't remember signing that note. I compared the two signatures myself. The letter showed me was one which she told me that she had written and signed herself."

E. E. Hurt, witness for appellee, testified:

"I am not intimately acquainted with Mrs. Joffre, having met her when she was executing some notes as surety for her son. Some time in the year 1914, I have forgotten the day of the month, Mrs. Perry Brown, who is a sister of Dave and Carl Metzger, owned some cattle of the estate of her husband and herself. Her husband was in the lunatic asylum, and they were disposing of those cattle to E. H. Joffre, and it seems that he did not have property enough to risk him with the entire indebtedness, and they required his mother to go on his notes and sign the notes with E. H.

Joffre. Mrs. Joffre and her son, E. H. Joffre, came into my office, and we drew up the chattel mortgage and the notes, being 20 or 22 notes, and E. H. Joffre signed the notes, and his mother, at least they said she was his mother, signed them also on the leaf of my desk. That is the lady there. (Witness identified the appellant.) I saw all the notes executed. I saw Mrs. Joffre sign her name to each note as surety for her son. I kept these notes in my possession for quite a while; I don't remember just how long. I had occasion to look at them several times after that. From that transaction I believe I would be familiar with her signature. I would say that the signature to the note in evidence is the handwriting of Mrs. Fannie Joffre.

"That was an instance in which Mrs. Joffre was really there; and she never did claim that they were not her signature. Mrs. Joffre did sign those notes; she said she signed them. That transaction has nothing to do with this transaction, not that I know of. I am not an expert on handwriting. I don't pretend to be. The sole basis of my opinion that this note was also written by Mrs. Joffre is what I have just stated to the jury. That was seven years ago. I was a notary then and also took her acknowledgment. I drew the papers for the Metzgers. I am in the habit of drawing papers and have been doing such work since that time. I have drawn a great many papers of this kind and see a great many signatures, hundreds of them. * * *

"I don't know that I observed particularly at that time whether she dotted her I's and crossed her T's, but I observed the manner in which she wrote, and the manner in which she made some of her letters. I don't know about her punctuation; I didn't pay any attention to any period or comma after the name 'Joffre.' I didn't notice any period or comma, or anything like that, after the 'Fannie.'

"I observed the manner in which she executed the notes, the cramped manner in which she wrote. What particularly called my attention to it was that she was writing on the leaf of my desk and writing in a cramped position, as though she did not have enough room, and I suggested that she ought to have more room; but she didn't change it. She said that she was accustomed to writing that way. It was her regular movement, I presume. In my opinion that is her signature to that note.

"I thought I wrote my signature the same way all the time; I may not. I think it depends on where you are sitting and the position you are in, and oftentimes the signature is not identical with some of the others."

John C. Cox, witness for appellee, testified:

"I live in Dallas, where I have practiced law for about five years. I am now associated with John R. Haynes. I have been associated with John W. George, Curtis Hancock, and A. S. Hardwicke. I was with that firm about a year. I have known Mrs. Fannie Joffre about six years. I also know the family. I met them at Irving while I was teaching school out there. I have seen Mrs. Joffre sign her name several times. I have also had access to her writing. While I was associated with Mr. Hancock, he had several occasions to have her write her signature to different instruments in the office.

I think on two occasions I had occasion to take Mrs. Joffre's acknowledgment. I think both times I went to Irving and got the signature of her and others to a deed. Mr. Hancock himself handled some matters for her. In this particular instance that I was talking about getting her signature to a deed, I wrote out the deed and went out there and got the signature of several parties to the deed. I have examined the note executed February 17, 1914, for $1,250, the note sued on, and from the familiarity that I have of her signature at the times I have seen it, I will say that in my opinion that is her signature. I am satisfied that it is her signature, in my own mind.

"I think it was in 1917 that I wrote the deed I have referred to. I just wrote one deed. I don't recall now what other instruments I wrote that she signed—whether an affidavit or a deed. I know I wrote a deed and took it out there and got her to sign it. As well as I remember, that deed was to J. H. Luna. That is the only deed or other instrument that I remember of taking her acknowledgment to. I might have taken her affidavit on some other instrument; I am not sure. I am a notary public. I think 1917 was my first year, as such officer; either 1916 or 1917, I don't recall which. I came here in 1915, and I was appointed the first time I could be. I couldn't say how many acknowledgments I have taken the signatures of parties to. I have taken quite a few. There has been quite a number taken in my office. I had written lots of deeds and taken the signatures of the parties. I would not undertake to say that of all of those deeds, the acknowledgments to which I have taken, I could carry them in my mind, or a picture of their signatures so that I could recall them to mind afterwards, a picture of that signature, not all of them. I do not know absolutely that this is her signature. All I know is that from the picture I have in my mind that is her signature. I have seen her signature a number of times, and in fact for almost a year I had her signature before me all the time, and it is my opinion, from this picture that I have in my mind of her signature, that this is also her signature. I think it looks like the signature that I remember her signing. I don't recall whether there are any particular differences. I do not claim to be an expert on handwriting."

W. L. Baker, a witness for appellant, on direct examination, after comparing the note sued on with the admitted signature of appellant on the pleadings filed in said suit, testified:

"That he did not know whether it was the same signature as the signatures on the pleadings; that it was different in the respects he had mentioned, that was all he could say."

On cross-examination said witness testified as follows:

"That the general characteristics of the signature on the note and the pleadings are all the same, except the letter 'M,' and stated that in the signatures of individuals there are always some minor differences; that no two signatures are exactly the same, and that a person in writing his name makes the same let-

ter in his different signatures slightly larger or smaller, or perhaps with some other difference in one direction or another, and that this is true in genuine signatures; that therefore the fact that there are minor differences in signatures does not in itself indicate a forgery, but simply indicates that there are variations in the signatures written by the same person. Witness stated that he could not and would not say that a signature of the nature of the one in question in this suit was a forged signature; that in his opinion the general characteristics are the same. * * * If the same party wrote it—I would not say that it was for the reason that there is a difference in the dots. It has not been the habit of the party who wrote those signatures to put in those dots behind the signatures—and the way they made the Ms. If the dots were eliminated, from the way the M is made, from a glance at it, I would say that the same person wrote it, just from glancing at it. * * * That the same party who wrote this might also have written the others. Witness stated that he could not and would not state that the signature to the note was a forged signature."

W. F. Miller, a witness for appellant, after testifying as an expert to the effect that the signature on the note was not in his opinion the signature of appellant, testified on cross-examination as follows:

"Referring to the signature on the note in suit, there was but very little difference in the signature to the note and the signatures of Mrs. Joffre to the pleadings with which he had compared the note signature. Witness stated that the general characteristics of the signature to the note and the signatures to the pleadings resembled; the general characteristics were the same. * * * It could be a forgery; I would not say that it is; I would not swear to it."

George Miller, witness for appellant, after having testified as an expert that in his opinion the signature of appellant to the note sued on was not her signature, testified, on cross-examination in reference to same, as follows:

"That he would not say that the note signature is not Mrs. Joffre's; that he would not swear positively to any signature that he did not see made, but that he did not believe the note signature to be Mrs. Joffre's."

[1] We appreciate the fact that expert testimony in cases of this character is resorted to on the ground of necessity, and that its probative effect, when resting alone upon comparison, is unsafe to act upon in depriving one of a valuable right. It may be conceded as a general proposition that expert evidence is not only the most unsatisfactory in character, but should be accorded the least weight as such to establish any fact in dispute, and should be received and acted upon with great care and caution. However, as such evidence is recognized as part of the means to be employed by which the truth or falsity of any matter in dispute may be determined, same cannot be on account of its inherent weakness discarded altogether as evidence without doing violence to the rules of evidence which recognize the right of litigants to resort to same in the course of legal proceedings.

[2] It is true, as stated by Mr. Greenleaf, that—

"All evidence of handwriting, except where the witness saw the document written, is in its nature comparison. It is a belief which a witness entertains upon comparing the writing in question with its exemplar in his mind derived from some previous knowledge."

But appellee's case does not rest entirely on opinion testimony based upon comparison, but, in a material measure, on facts which, taken in connection with the opinion of the witnesses, together with other circumstances revealed by the case, were sufficient evidence to warrant a reasonable belief of the existence of the fact which the appellee sought to prove, to wit, that appellant executed the note sued on. The testimony of E. E. Hurt was based on having seen appellant sign her name to 22 notes which remained in his possession quite a while, during which time he had occasion to examine same several times. Likewise the testimony of J. C. Cox was based on knowledge of appellant's handwriting by having seen her write her name two or three times to legal instruments. From the testimony of Harvey Mynatt, which the jury had a right to believe although contradicted by the testimony of appellant, when he presented the note to appellant for adjustment she did not deny that the signature on the note was hers, although they compared same with a letter she had written to some one in France; appellant admitting that the writing in said letter and the note signature were alike, but claiming that she could not remember signing the note. He further testified that she did not deny that she had signed the note. The jurors had the right to accord this testimony such weight as in their judgment they believed same entitled, as well as to pass upon the credibility of the witnesses, even to the extent of believing the testimony of the witness Mynatt, and, in connection with the other evidence before them, to resolve the issue in favor of appellee by accepting same as sufficient to thus lead their minds to the conclusion reached, as reflected by their verdict.

[3] It is not the province of this court to perform the functions of a jury, but simply to determine whether or not there was evidence before the jury sufficient to support the conclusion reached, and, under this rule, we cannot say that the verdict as rendered by the jury was without sufficient evidence to support it, but, to the contrary, the evidence herein set out was sufficient to authorize the conclusion on which the judgment appealed from was entered.

[4] The following circumstances are worthy of notice, which reasonably must have exercised some influence upon the jury, to wit: Appellant and her daughter, Mrs. Littlepage, testified that appellant had on several occasions assisted her son, E. H. Joffre, in business transactions and had signed other notes for him, and the record does not show that appellant ever refused to sign similar obligations. Therefore no reason is shown why E. H. Joffre should have resorted to the crime of forgery in order to have secured his mother's assistance in this particular transaction. Mrs. Pemberton testified she could not say whether it was her mother's signature or not.

Without undertaking to discuss the many authorities we have examined, we refer to the following as supporting the conclusion reached by us on this assignment: Jones v. First National Bank (Tex. Civ. App.) 160 S. W. 126; Washington v. Missouri K. & T. Ry., 90 Tex. 314, 38 S. W. 766; San Antonio Traction Co. v. Levyson, 52 Tex. Civ. App. 122, 113 S. W. 569; Nevill v. St. Louis S. W. Ry. Co. (Tex. Civ. App.) 211 S. W. 523; G. C. & S. F. Ry. Co. v. Jackson, 49 Tex. Civ. App. 573, 109 S. W. 478; Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S. W. 139; Hines v. Jones (Tex. Civ. App.) 225 S. W. 412; Bolt et al. v. State Savings Bank of Manchester, Iowa (Tex. Civ. App.) 145 S. W. 707; Joffre v. Mynatt (Tex. Civ. App.) 206 S. W. 951.

[5] The fifth assignment of error is addressed to admitting over objection of appellant the testimony of the witness E. E. Hurt to the genuineness of appellant's signature to the note involved herein, on the ground that he failed to qualify, in that he did not show sufficient familiarity with the signature of appellant to testify as to the genuineness of same. The sixth assignment presents the same objection to admitting in evidence the testimony of the witness John C. Cox, who testified as to the genuineness of appellant's signature to the note sued on, and said assignments will therefore be disposed of as presenting but one proposition.

E. E. Hurt testified that he was acquainted with appellant; that she came to his office some time in 1914, on which occasion she signed her name to 22 notes; that he saw her sign her name to each note, kept said notes in his possession for quite a while, during which time he had occasion to look at them several times; and that from said transaction he believed he was familiar with her signature.

The witness Cox testified that he had seen appellant sign her name several times and had had access to her writing; that on two occasions he took her acknowledgment; and that from his familiarity with her signature in his opinion the note signature was appellant's.

The objections urged by said assignments to the admission of the testimony of said witnesses were not well taken, as same went more to the weight to be given the testimony of said witnesses than to the admissibility thereof. The court did not err in admitting said testimony, as the witnesses showed sufficient familiarity with the handwriting of appellant to testify to same, whether being expert or not. Therefore said assignments are overruled. Williams v. Deen, 5 Tex. Civ. App. 575, 24 S. W. 536; Miller v. Burgess (Tex. Civ. App.) 136 S. W. 1174; Greenleaf on Evidence (15th Ed.) stanza 577.

[6] The seventh assignment of error complains of the action of the trial court in permitting the jury, over appellant's objection, to take the note sued on with them in their retirement to consider of their verdict, on the ground that in so doing each of said jurors were permitted to become a witness in said cause in the nature of an expert by comparing said note signature with the admitted signatures of appellant. This assignment cannot be sustained, as this was authorized by article 1957, Vernon's Sayles' Civil Statutes 1914, and, as construed by the following cases: S. A. & A. P. Ry. Co. v. Barnett, 12 Tex. Civ. App. 321, 34 S. W. 139; Curtsinger v. McGown (Tex. Civ. App.) 149 S. W. 303; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 736. Said assignment is therefore overruled.

Finding no material error in the record, the judgment of the court below is affirmed.

Affirmed.