**JACKSON v. CHAPMAN, Com'r of Insurance and Banking, et al. (No. 1639.)**

(Court of Civil Appeals of Texas. El Paso. May 29, 1924. Rehearing Denied June 19, 1924.)

1. Appeal and error ⏤1011(1)—Finding on conflicting evidence not set aside unless so against preponderance of evidence as to be clearly wrong.

Lower court's findings on conflicting evidence will not be set aside unless so against preponderance of evidence as to be clearly wrong, or manifestly a result of passion, prejudice, or other improper influence.

2. Banks and banking ⏤73—Transaction by insolvent bank held prohibited voluntary general assignment so as to constitute transferee trustee for all creditors.

Where all assets of an insolvent bank of any value were taken over by another bank which assumed to pay certain of insolvent bank's indebtedness, held, that such transaction constituted "a voluntary general assignment of insolvent bank's business and affairs" with purpose of preferring creditors in violation of Vernon's Sayles' Ann. Civ. St. 1914, art. 551, and was void, and such assets were held by transferee bank in trust for all creditors of insolvent bank.

3. Banks and banking ⏤80(2)—Balance due on secured claim after enforcement of security held provable as general unsecured claim.

Where creditor's claim against insolvent bank was secured by lien upon lot which he had sold to it, but which was inadequate as security, after crediting proceeds of lot, any balance due upon his claim was provable as general unsecured claim.

4. Action ⏤28—Plaintiff may waive conversion and sue upon implied promise to pay.

Plaintiff may waive right to sue for conversion and sue in assumpsit upon an implied promise to pay.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Action by J. L. Chapman, Commissioner of Insurance and Banking, and others, against H. P. Jackson, who filed a cross-action against the Guaranty State Bank of Eastland and another. Judgment for plaintiffs and for defendant against named cross-defendant, and defendant appeals. Affirmed in part; reversed and remanded in part.

E. J. McQuillan, of El Paso, for appellant.
Turner, Seaberry & Springer and Scott, Brelsford, Funderburk & Ferrell, all of Eastland, for appellees.

HIGGINS, J. The City National Bank of Eastland conveyed a lot in the city of Eastland to the appellant Jackson, who, in part payment therefor, executed two notes for $5,000, each, the payment of which was secured by a vendor's lien expressly reserved in the conveyance. The Security State Bank & Trust Company of Eastland became the owner of the notes. On May 22, 1920, Jackson conveyed the lot to the Guaranty State Bank of Eastland, which assumed the payment of said notes. A lien was reserved to secure their payment. The Security State Bank & Trust Company is in process of liquidation by J. L. Chapman, the commissioner of banking.

This suit was brought by the commissioner against Jackson to recover upon the notes and foreclose the lien. Jackson filed a cross-action against the Guaranty State Bank of Eastland and the First State Bank of Eastland, the latter being sued personally and as trustee of the Guaranty State Bank of Eastland. Upon trial without a jury judgment was rendered in favor of the commissioner as prayed for and in Jackson's favor over against the Guaranty State Bank, but denied Jackson any relief against the First State Bank.

Findings and conclusions were not filed by the trial court. From the judgment rendered Jackson appeals. He assigns no error to the judgment in favor of the commissioner, but complains of the denial of relief upon his cross-action against the First State Bank.

In brief the allegations of the cross-action set up that he had conveyed the lot to the Guaranty State Bank, which assumed the payment of the notes sued upon; that on April 20, 1921, the First State Bank purchased and received all of the assets of the Guaranty State Bank, including said lot, in consideration of the assumption by the First State Bank of all the debts of the Guaranty State Bank; that if the First State Bank did not expressly agree to assume all of said debts it nevertheless purchased and received all of said assets, treated same as its own, commingled them with its own assets, collected the rents from the property, paid taxes and paving liens on same, and paid no consideration for such assets except the assumption of the debts of the Guaranty State Bank, wherefore the First State Bank was estopped to deny its liability upon the notes sued upon and had impliedly agreed to assume and did assume liability for all of the debts of the Guaranty State Bank including the notes sued upon.

The evidence shows without dispute that on or about April 20, 1921, the First State Bank took over practically all of the assets of the Guaranty State Bank of any value and in consideration therefor agreed to pay the depositors of the latter bank and assume certain of its bills payable and outstanding drafts amounting to about $100,000, its salary indebtedness and certain other debts of minor importance. The evidence is conflicting as to whether it agreed to take over the lot sold by Jackson to the Guaranty State Bank and assume the indebtedness against

⏤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

it, but it is shown that it has never received a deed therefor. It is asserted that the preponderance of the evidence shows that the First State Bank agreed to take over the lot and expressly assumed such indebtedness, but upon this issue the evidence is conflicting and amply supports a finding adverse to appellant.

[1] Under such circumstances the finding of the lower court will not be set aside unless the finding is against such a preponderance of the evidence that it is clearly wrong or manifestly the result of passion, prejudice, or other improper influence. Railway v. Somers, 78 Tex. 439, 14 S. W. 779; Railway v. Schmidt, 61 Tex. 282; Zapp v. Michaelis, 58 Tex. 275.

The evidence in this case is such that this court would not be warranted in setting aside the presumed adverse finding of the trial court upon the issue of an express assumption of the debt in controversy.

[2] But upon the other phase of the case the court erred in denying any relief against the First State Bank. According to the "trust fund" doctrine the assets of an insolvent corporation constitute a trust fund for the benefit of its creditors.

In National Bank v. Texas Inv. Co., 74 Tex. 421, 12 S. W. 101, Judge Gaines said:

"It cannot be claimed that the creditors have any lien upon the property of a solvent corporation which it disposes of in the usual course of its business. But when one corporation transfers all its assets to another corporation and thus practically ceases to exist, without having paid its debts, the latter corporation takes the property subject to a lien in favor of the creditors of the old company."

See, also, Clevenger v. Galloway & Garrison (Tex: Civ. App.) 104 S. W. 914.

Another application made in Texas and some other states of the trust fund doctrine is the rule that preferences by insolvent corporations are invalid. See Lyons-Thomas, etc., v. Perry, etc., 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802; also Fowler v. Bell, 90 Tex. 150, 37 S. W. 1058, 39 L. R. A. 254, 59 Am. St. Rep. 788, where it was said by Judge Brown:

"A corporation created in this state, which has become insolvent and has ceased to carry on its business, cannot make any disposition of its property which gives a preference to one or more creditors over others, for the reason that, upon insolvency and cessation of the business, the assets of the corporation by operation of the law become a trust fund in the hands of its directors to be disposed of for the benefit of its creditors, and any disposition which discriminates between such creditors is a violation of that trust."

The Guaranty State Bank is a Texas banking corporation, and article 551, Vernon's Sayles' Revised Statutes, provides:

"It shall be unlawful in this state for a bank, savings bank or trust company, organized under this title, to make a voluntary general assignment of its business and affairs. In case it shall find itself to be in a failing condition, it shall immediately place itself in the hands of the commissioner. Any deed of voluntary general assignment, executed by any such bank or trust company, shall be null and void; and, in case the officers or directors of any such institution shall endeavor to make any voluntary general assignment of its assets, the commissioner shall immediately take possession thereof and proceed as heretofore provided in the case of insolvent banks in this state, for the appointment of a receiver by court. All transfers of the notes, bonds, bills of exchange or other evidence of debt, owing to any bank or trust company organized under this title, or of deposits to its credit, all assignments of mortgages, securities on real estate, or of judgment or decrees in its favor, all deposits of money, bullion or other valuable thing for its use, or for the use of any of its shareholders or creditors, and all payments of money to it made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this title, or with a view to the preference of one creditor to another, shall be utterly null and void."

Viewing the facts in this action in the aspect most favorable to the First State Bank, they are as follows:

The Guaranty State Bank on April 20, 1921, was upon the verge of failure, due to heavy losses and withdrawal of deposits. It was in fact insolvent and had exhausted its borrowing capacity. If the First State Bank did not in fact know of its insolvency, the facts within its knowledge charged it with notice thereof. Overby, the active vice president of the First State Bank, testified that what they did in the premises was to prevent a "financial crash." The Guaranty State Bank approached the First State Bank to obtain a loan of $25,000, which the latter declined to make, being of the opinion the desired loan would not tide the Guaranty Bank over its difficulties. Upon the trial of the case officers of both of the banks who conducted the negotiations between them testified, displaying remarkable ignorance of the exact terms and conditions upon which the First State Bank took over the affairs of the Guaranty Bank, but their testimony does divulge that the former took over all of the cash account of the Guaranty Bank except a check of the Massey Drug Company, for $2,500, which they rejected; also took over all of the other assets except the expense account, suspense account, some other little accounts, and the bank building, furniture, and fixtures. The expense account was $14,000 "in the red," and the First State Bank considered the Jackson lot upon which the bank building was situated to be worth less than the incumbrance against it. The inevitable conclusion from the testimony of the witnesses is that practically all assets

were taken over that were considered of any value. The Guaranty State Bank thereupon closed its doors and ceased to transact business. In consideration of the delivery of such assets to it the First State Bank assumed to pay and has honored the checks of the depositors of the Guaranty Bank and assumed the payment of its bills payable to other banks for money borrowed in the sum of about $60,000, and outstanding drafts amounting to about $40,000. The amount of deposit liabilities assumed is not shown. It is shown that the First State Bank still has on hand part of the assets which it thus obtained.

Upon the facts stated we are of the opinion that the transaction constituted "a voluntary general assignment of its business and affairs" and was made with the view of preferring depositors and those creditors whose claims the First State Bank expressly agreed to pay. As such it was in violation of the statute quoted, "utterly null and void," and such assets and the proceeds thereof are held in trust by the First State Bank and subject to a lien in favor of all creditors of the Guaranty Bank. For any misapplication of the assets and proceeds to the prejudice of any creditor the First State Bank is liable for the value of the assets and proceeds so misapplied as for conversion.

[3] It is true Jackson's claim is secured by lien upon the lot which he sold to the Guaranty State Bank, but the security is inadequate. After crediting the proceeds of the lot any balance due upon his claim is provable as a general unsecured claim.

The First State Bank demurred generally to the sufficiency of Jackson's cross-action, but the ruling of the court thereon was not invoked. We are of the opinion that the cross-action was sufficient to entitle him to relief upon the principles above set forth.

[4] For conversion the plaintiff may waive the tort and sue in assumpsit upon an implied promise to pay. 2 R. C. L. 755 and 786; 1 Cooley on Torts (3d Ed.) 159–166. The facts pleaded show a transaction in violation of article 551, and are sufficient to maintain an action in assumpsit. In any event the facts pleaded and the evidence show that the assets passed to the First State Bank in violation of the law and charged with a trust and lien in favor of creditors, and it was error to deny appellant any relief.

The error does not affect the judgment in favor of the commissioner against Jackson, and the issues are severable; therefore the judgment in favor of the commissioner is affirmed; as to all issues between Jackson and the Guaranty State Bank and the First State Bank the judgment is reversed and remanded.

Affirmed in part; reversed and remanded in part.

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes