## WOOLWORTH et al. v. TATUM STATE BANK.

### No. 4149.

Court of Civil Appeals of Texas. Texarkana.

March 9, 1932.

Rehearing Denied March 17, 1932.

Smith, West & Gladney, of Henderson, for appellants.

Brachfield & Wolfe, of Henderson, for appellee.

SELLERS, J.

This suit was brought in the district court of Rusk county by the Tatum State Bank, the appellee herein, against J. F. Copeland, T. J. Wooten, J. Pruitt, Oliver Daniel, G. W. Briggs, J. G. Woolworth, R. O. Kuykendall, Mary L. Martin, and her husband, W. C. Martin, and Mrs. R. T. Gladney, to recover upon a certain contract executed by the above-named parties. A trial was had before the court, and resulted in a judgment in favor of the appellee against the parties above named, defendants in the lower court, jointly and severally for the sum of $8,780.99, from which judgment G. W. Briggs, R. O. Kuykendall, J. Pruitt, Mrs. R. T. Gladney, and J. F. Copeland have duly prosecuted this appeal.

The material allegations of appellee's petition upon which it went to trial are as follows:

"That on March 15th, 1927, the First State Bank of Tatum, Texas, was a banking institution doing business in the town of Tatum, Texas, with the defendants hereinbefore named owning all the stock in said bank; that said First State Bank of Tatum, Texas, was in such a financial condition that it was unable to continue its business and it became necessary to reorganize said bank or place the same in the hands of the banking department of the State of Texas for liquidation.

"That for the purpose of preventing the First State Bank of Tatum from going into

liquidation and being placed in the hands of the banking department, the defendants herein named went into a written agreement with one P. R. Nisbett, and his associates agreeing that if a new bank was organized to take over the assets and liabilities of the First State Bank of Tatum, that they would indemnify the new bank against any loss on the notes taken over by them.

"That the said P. R. Nisbett and his associates did organize the Tatum State Bank and took over the assets and liabilities of the First State Bank of Tatum, among which were various and sundry notes which were taken by said Tatum State Bank upon the guarantee of the defendants herein among which notes and assets of such First State Bank were the notes hereinafter set out which were uncollectable and a loss to said Tatum State Bank, to-wit: (Here follows description of the notes.)

"That the plaintiff has made every effort to collect the amounts due as set out in paragraph 4 of this petition, but have been unable to make any collections on same except as herein set out; that in accordance with said agreement of March 15th, 1927, the defendants herein were duty bound and obligated upon the demand of the Tatum State Bank to pay to said Tatum State Bank on and after the expiration of twelve (12) months the amount of the notes still left on hand and remove said notes from the assets of said bank and upon failure to do so the said Tatum State Bank was empowered and authorized to enforce the collection of said amount against the defendants herein named jointly and severally together with accrued interest thereon and an additional ten (10) per cent as attorney's fees."

The petition closes with a prayer for a joint and several judgment for the amount sued for.

The contract sued upon was introduced in evidence, and is as follows:

"This instrument witnesseth an agreement entered into between the undersigned, owners of the capital stock of the First State Bank of Tatum in the Town of Tatum, Texas, in the number of shares set opposite our names, respectively, to-wit:

| Name | No. Shares |
|---|---|
| J. F. Copeland | 10 |
| J. T. Wooten | 10 |
| J. Pruitt | 10 |
| Oliver Daniel | 5 |
| G. W. Briggs | 15 |
| M. L. Hemby | 5 |
| J. G. Woolworth | 5 |
| J. F. Copeland, J. Pruitt, R. O. Kuykendall | 25 |
| R. O. Kuykendall | 5 |
| Mrs. R. T. Gladney | 5 |

being all of the stockholders of said bank, parties of the first part and P. R. Nisbitt for himself personally and his associates and a new bank to be organized in the Town of Tatum by the said P. R. Nisbitt and associates, parties of the second part, as follows, to-wit:

"The said P. R. Nisbett for himself and associates agree and obligate themselves to organize a new state bank to do business in the Town of Tatum, Texas, the same to have a paid up capital of Seventeen Thousand Five Hundred Dollars ($17,500.00) and a paid in surplus of Seventeen Hundred Fifty Dollars ($1,750.00), said bank to be promptly organized and application made for charter:

"That when said charter has been obtained and the new bank is ready to open for business, the same shall take over and assume all of the deposits of the First State Bank of Tatum as reflected and shown by its individual ledger but not further or otherwise; that said new bank will further take over and assume all other liabilities of said First State Bank of Tatum as reflected by its books and shown by a statement made therefrom, but not further or otherwise;

"That upon the obtaining of the said charter by the parties of the second part with Certificate from the Commissioner of Banking to open for business, the parties of the first part agree to forthwith hold a stockholders' meeting, having previously executed all necessary waivers incident thereto and at said meeting to pass all necessary motions and resolutions authorizing the taking over by the said new bank the above liabilities and further and especially authorizing the sale and transfer to said new bank its cash, sight exchange, bills receivable, banking house furniture to the full discharge and liquidation to the amount of the obligation thus assumed by the new bank and to vote in the affirmative for such resolution either in person or by proxy.

"It is agreed between the parties that the banking house furniture and fixtures shall be taken over by the new bank for Five Thousand Three Hundred Fifty Two & 74/100 Dollars ($5,352.74); that same together with the cash and a sight exchange shall be first credited upon the amount of the obligation so owing to the new bank; that for the balance of said obligation, the First State Bank of Tatum shall transfer and assign, under its endorsement and guaranty, such of its bills receivable and in sufficient amount to fully liquidate the balance of said obligation so owing to the new bank; and that as additional security and guaranty to the new bank and in support of the guaranteed endorsement of the First State Bank of Tatum made upon the bills receivable of said bank so transferred to the new bank, the remaining assets of the First State Bank of Tatum shall be endorsed and assigned to the new

bank to be held by it as collateral security and the proceeds to be derived from collections thereon to be used by the new bank to reimburse itself for any and all notes so endorsed and sold to it as may ultimately prove to be insolvent and uncollectible within a period of six months after the maturity of any such obligations in the discretion of said new bank; and as further and additional security upon the notes so sold and transferred to said new bank, we, the undersigned, stockholders, do hereby acknowledge ourselves, jointly and severally liable to said new bank in the principal sum of Ten Thousand Dollars ($10,000.00) and do jointly and severally agree that in the event any of the notes so sold and transferred to the new bank shall be uncollectible to the full amount of their face and that said new bank shall suffer a loss by virtue of said notes or any of them that we, jointly and severally, will reimburse said new bank for such loss not to exceed said aggregate amount of $10,000.00.

"The liability of the stockholders hereunder shall be matured and enforceable twelve months from the date hereof; and we hereby jointly and severally agree that we will, upon demand of said new bank, at any time on and after the expiration of twelve months from this date take up and remove from the assets of said bank any and all notes which were sold and transferred to it by the First Bank of Tatum that have not previously been paid, and failing to do so, the new bank may enforce collection against us jointly and severally for the amount of said notes so unpaid together with accrued interest and ten per cent attorney's fees, but the Tatum State Bank may extend time of settlement twelve months and this instrument shall be, and remain in force and effect."

(Signed by all parties.)

There was evidence offered by the appellee to sustain the allegations of the petition that the First State Bank was insolvent when the contract sued upon was executed.

By appropriate assignments appellants challenged the authority of the trial court to enter judgment against them for any amount on the ground that the contract and appellee's petition, as well as the undisputed evidence, show an undertaking to enforce a contract entered into in violation of the banking laws of the state of Texas.

■■ That the facts of this case show a voluntary general assignment of the business and affairs of the First State Bank of Tatum to the Tatum State Bank is, in our opinion, beyond any doubt settled by the authority of Jackson v. Chapman, Commissioner of Banking (Tex. Civ. App.) 263 S. W. 958. This being true, the contract sought to be enforced was entered into in violation of article 531 of the Revised Statutes of 1925, which provides: "It shall be unlawful for any banking corpora-

tion organized under this title to make a voluntary general assignment." Furthermore, the authorities support the statement of law announced in volume 10, section 107, Texas Jurisprudence, which provides:

"A contract cannot impair the validity or force of any law, nor control or limit the provisions of a statute. As a general rule, therefore, a contract made in violation of the constitution, or of an express statute, or of an ordinance, or the performance of which will result in such violation, is void and unenforceable, without regard to the question of moral turpitude, and whether the parties knew the law or not. * * *

"The test of illegality is that the thing contracted to be done as a consideration cannot be done without violating the statute."

Section 136 of the same authority says:

"As between the parties to the transaction, no one of them can recover for anything done or promised in carrying out the illegal enterprise. An unlawful contract cannot form the basis of any enforceable legal or equitable rights, or impose any legal obligations upon the parties to it."

Therefore, to uphold the contract sued upon as appellee insists would be to violate the principles enunciated in the authorities which we have quoted, and would enable insolvent banks to violate the public policy of our Banking Laws which prohibit a voluntary assignment by an insolvent bank and which require the liquidation of an insolvent bank by the state banking commissioner under orders of the district court or judge thereof. We do not feel that we can lend our aid for the accomplishment of any such purpose.

The judgment of the trial court will be reversed, and judgment here entered for appellants.